# CHARLESTON.

## WALKER *et al. v.* STROSNIDER.

### Decided February 15, 1910.

1. ADJOINING LANDOWNERS—*Lateral Support—Land in Natural State.*

   An owner of land is entitled, *ex jure naturae,* to lateral support in the adjacent land for his soil, but not for buildings erected thereon.

2. SAME—*Lateral Support—Excavations Causing Injury—Liability.*

   An excavation, made by an adjacent owner, so as to take away the lateral support, afforded to his neighbor's ground, by the earth so removed, and cause it, of its own weight, to fall, slide or break away, makes the former liable for the injury, no matter how carefully he may have excavated. Such right of support is a property right and absolute.

3. SAME—*Lateral Support—Buildings—Excavations by Neighbor—Care Required.*

   Though an adjoining owner has no right of support in his neighbor's land for his buildings, unless he has acquired it by grant or otherwise, and the latter may excavate in his land so as to cause them to fall, without committing a trespass or taking away a property right, provided the adjacent soil would not have fallen of its own weight, he may nevertheless be liable, in respect to his conduct, for the injury done.

4. SAME.

   An adjoining owner, excavating on his own land, must exercise reasonable care, prudence and skill, in doing so, for the

safety of buildings, if any, standing on the adjacent land. This duty is enjoined, not by any right. of support, _ex jure naturae_, that the owner of the building has in the adjoining land, but by a legal rule of conduct, requiring every owner of property so to use it as not to injure his neighbors's.

5.   SAME.

In altering the condition of his land, adjoining another's building, by excavating the soil and replacing it with a structure, the owner must not only abstain from collateral negligent or wrongful acts, such as unnecessarily heavy blasting, digging out the adjacent wall, projecting heavy articles against the wall or building, and the like, but must perform the work with reasonable care for the safety of the adjacent building, such as diligence in the construction of his wall after having removed the soil, removal of the soil and replacement thereof with the wall by sections, if necessary as a measure of reasonable precaution, or the adoption of other reasonable and practicable precautions.

6.   SAME—_Lateral Support—Building—Temporary Support in Excavating._

In such case, the measure of his duty goes beyond the exercise of care in making the excavation, a mere incident of the alteration intended, and extends to reasonable means of temporary support of the adjacent building, while the work of erecting the new structure is in progress.

7.   SAME—_Lateral Support—Buildings—Temporary Support in Excavating—Extent of Care Required._

Though this duty, respecting adjacent buildings, is imposed by law upon a person, while engaged in altering the condition of his own property, he is not a guarantor of their safety, nor bound to take precautions, or adopt measures, for their protection beyond such as are reasonably practicable, not unduly expensive, and amount to reasonable and ordinary care and prudence for their safety.

8.   SAME—_Lateral · Support—Buildings—Notice of Intent to Excavate._

In such case, the adjoining owner is under the further duty of giving the owner of the building notice of his intention to alter the condition of his property, the character of the alteration to be made and the time thereof, and allow him opportunity to adopt such further measures for the absolute protection and sceurity of his building as he may see fit to adopt.

9.   SAME—_Lateral Support—Buildings—Notice of Intention to Excavate—Necessity for Formal Notice._

The giving of formal notice is unnecessary in such case, if

the owner of the building has full knowledge of the character and time of the making of the alteration and opportunity to adopt protective measures for the safety of his building.

10.  SAME—*Lateral Support—Buildings—Notice of Intention to Excavate—Effect on Duty to Exercise Care.*

Such notice or knowledge on the part of the owner of the building does not absolve the adjoining owner from duty to exercise reasonable care and prudence to avoid injury to the building in improving his own property. The giving of such notice, when necessary, is simply an additional precaution, omission of which would, under some circumstances, amount to negligence.

11.  SAME—*Lateral Support—Buildings—Excavation by Neighbor—Duty of Owner to Prop Building.*

The duty of the owner of the building to prop it up, if necessary, is not inconsistent with the requirement of care on the part of the adjoining owner in the improvement of his property. If the latter exercises reasonable care and injury nevertheless results, he is not liable, the loss being attributable in law to the failure of the owner to do further things necessary to absolute security. If, on the contrary, he did not exercise such care, he is liable, although the owner could have prevented the injury.

12.  SAME—*Lateral Support—Use of Premises Affecting Adjoining Land—Defective Buildings—Duty of Adjacent Owner Excavating.*

Neither defective or improper construction of the building, nor its use for manufacturing purposes, involving the running of machinery therein, will bar an action for damages for injury thereto, resulting from negligent excavating, under the law of contributory negligence. The excavator must deal with the conditions as he finds them, using reasonable and ordinary care, under all the circumstances, to avoid injury to the building and its contents.

13.  SAME—*Excavation Affecting Adjoining Structure—Rights of Tenant.*

In case of the fall of a building, occasioned by negligent excavation, a tenant of a single floor or room thereof, deprived of his right of occupancy and use, and sustaining loss of personal property, by reason of the fall, has a right of action for at least nominal damages, in respect to the tenancy, and for consequential damages, in respect to the personal property injured and destroyed.

14. MASTER AND SERVANT—*Injury to Third Person—Independent Contractor.*

Employment under a contract, defining not only what is to be done, but also the manner in which the work is to be executed, is not independent, and, if injury to a third person result from the performance of the work in conformity with such contract, and the thing done or the manner of its performance if wrongful or negligent, the employer is liable.

15. SAME.

If an adjoining owner, about to excavate, along the side of a building, belonging to another person, for the erection of a building on his own property, adopt, as a means of protecting the building, the cutting of a trench and construction of a concrete retaining wall therein, four feet from the building along the side thereof, and then running directly to one corner thereof, and let of work of cutting the trench and constructing the retaining wall to contractors, under contracts, leaving to them no discretion as to where or how such wall shall be constructed and such measure of protection does not amount to the exercise of reasonable and ordinary care for the safety of the building, and, by reason of such neglect, the building fall, the employer is liable.

16. ADJOINING LANDOWNERS—*Injury to Building by Excavating on Adjacent Premises—Sufficiency of Declaration.*

It suffices in a declaration, seeking damages for an injury to a building or a tenant thereof, resulting from negligent excavation, to set forth the relative situation of the properties, the interest of the plaintiff, the duty of the defendant, the acts done and the results, and charge that the work was done injuriously, wrongfully, carelessly and negligently.

17. EVIDENCE—*Opinion Evidence—Impressions in Nature of Physical Facts.*

The opinion of a witness, as to the physical cause of the fall of a building, who, being in it, just a few minutes before it fell, observed indications of the impending collapse and was on the premises and examined it immediately after it fell, is admissible in evidence, on the ground that the impression, made upon his mind at the time, is in the nature of a physical fact, and, the further ground of his obvious inability to portray to the jury all the facts, tending to produce the impression.

18. DEPOSITIONS—*Admissibility in Evidence—Opinions of Experts Based on Assumed Facts.*

Opinions of expert witnesses, based on assumed facts, stated in hypothetical questions embodied in depositions, taken in advance of trial, may be read as evidence on the trial, provided

evidence of all the facts, on which they were based, has been introducd.

19. APPEAL AND ERROR—*Harmless Error—Exclusion of Evidence.*

Exclusion of evidence, constituting no ground of defense, offered by a defendant, though admissible if offered by the plaintiff, as tending to sustain the action, is not prejudicial to the former, and, therefore, not erroneous.

20. SAME—*Exceptions—Excluding Answer of Witness.*

To sustain an exception for refusal to permit a witness to answer a question, the record must show what answer the witness was expected to make.

21. TRIAL—*Instructions—Misleading Instructions.*

It is not error to refuse instructions, so framed as to give them a tendency to mislead the jury.

22. ADJOINING LANDOWNERS—*Actions—Instructions.*

In an action for injury to the contents of a building by alleged negligent alteration of the condition of adjacent property, it is reversible error to refuse an instruction, telling the jury they should find for the defendant, unless they believe the injury was the natural and probable consequence of negligence or a wrongful act on the part of the defendant and that such consequence ought to have been foreseen by him in the light of the attending circumstances.

Error to Circuit Court, Mingo County.

Action by Ed. L. Walker and others against John Strosnider. Judgment for plaintiffs, and defendant brings error.

*Reversed and Remanded for New Trial.*

*Sheppard, Goodykoontz & Scherr and Brown & Wiles,* for plaintiff in error.

*Stokes & Bronson,* for defendants in error.

POFFENBARGER, JUDGE:

Assigning numerous errors, John Strosnider complains of a judgment of the circuit court of Mingo county, in an action brought against him by Ed L. Walker and Kenna Blackburn, for damages, resulting to them from the fall of a brick building in which they were conducting a printing business, the ground of Strosnider's liability being negligence in effecting an excavation on his own adjoining property, in consequence of which

the building fell, injuring and destroying the printing presses, type and other materials.

According to the contentions found in the briefs, the case involves primarily the relative rights of adjacent owners in respect to lateral support, and secondarily, the right of a lessee in that respect. The ascertainment of these rights and reciprocal duties will settle most of the questions discussed. The sufficiency of the declaration, the propriety of rulings on instructions and the admission and rejection of evidence, constituting the subjects of complaint in the assignments of error,· must, in most instances, be determined by the same general principles.

An owner of land is *ex jura naturae* entitled to lateral support for his soil, but not for buildings erected thereon. In other words, an excavation, made by an adjacent owner, so as to take away the lateral support of his neighbor's ground and cause it, unburdened by buildings or structures of any kind, to fall, slide or break away, subjects the former to liability for the injury done, no matter how carefully he may have made the excavation. *Gildersleeve* v. *Harmon,* 109 Mich. 431; *Railway Co.* v. *Bonhayo,* 94 Ky. 67; *Ulrick* v. *Loan & Trust Co.,* 2 S. D. 283, 3 S. D. 44; *Stevenson* v. *Wallace,* 27 Grat. 77; *Moody* v. *McClelland,* 39 Ala. 45; *Oneil* v. *Harkins,* 71 Ky. 650. But, if his excavation is so made that the adjacent land would not have fallen, slid or spread by its own weight, yet, weakened by the excavation, did so by reason of the weight of buildings or structures thereon, he is not liable, provided he exercised prudence, care and caution in effecting the excavation. *Shrieves* v. *Stokes,* 47 Ky. 453; *City of Quincy* v. *Jones,* 76 Ill. 231; *Block* v. *Haseltine,* 3 Ind. App. 491; *Larson* v. *Railway Co.,* 110 Mo. 234. This, however, is subject to an important exception. If, by grant, express or implied, the owner of the adjoining land has acquired a right of lateral support for his buildings in addition to that given him by law for his soil, the liability of the disturber by excavation is absolute in respect to the buildings as well as the soil, and no inquiry arises as to whether the work was done negligently or unskilfully. *Stevenson* v. *Wallace,* 27 Grat. 77; *Turnstall* v. *Christian,* 80 Va. 1; *Burwell* v. *Hobson,* 12 Grat. 322; *Sanderlin* v. *Baxter,* 76 Va. 299; *City of Quincy* v. *Jones,* 76 Ill. 231; 2 Min. Inst. 26. This exception to the general rule is inapplicable here, there

being no pretense of the acquisition of such additional right. Hence there is no occasion to indicate how it may be obtained.

The duty on the part of the excavator, as regards buildings on adjacent land, when no right of lateral support therefor has been acquired, results from the relative rights of the parties and legal principles, governing conduct. As an adjacent owner has no right of support for his buildings, he has no property right in the form or nature of an easement in his neighbor's lands. If, therefore, the latter remove a part of his land so as to endanger the building of the former, he destroys no property right,—takes away nothing that belongs to the former. It does not follow, however, that he owes him no duty in the premises. Though he has complete dominion and power over his own land and may do with it what he pleases, he is nevertheless bound, agreeably to the maxims, *"Sic utere tuo ut alienum non laedas"* and *"Prohibetur ne quis faciat in suo quod nocere posit alieno,"* to use his property in such a manner as not to injure his neighbor's. This gives the latter no property right in the land of the former. It merely gives a personal right against him. It places a restraint upon his conduct. For any lawful purpose, he may use his property, but he must use it in a lawful, that is, careful, manner. In other words, he must execute the work, as far as is reasonably practicable, and not unduly burdensome, with a view to the safety of the buildings on the adjacent property. But for this rule, he might go at any hour of the day or night, without having given any notice to the adjoining owner, indicating when, how or to what extent he intended to alter the condition of his property, and make an excavation for a celler along the entire wall of a heavy valuable building, knowing it would fall in consequence thereof, and yet intending to replace, the earth removed by a wall. He would be under no duty to vary the mode or manner of his work in the slightest degree, in respect to the time thereof or otherwise, in the interests of the safety of the building. Having thus made the excavation, he could build his wall at his leisure and would be under no duty to prosecute the work diligently even though it should be apparent that delay in this part of the work would endanger the building. Such conduct would be reckless, careless and wanton, in view of the ease with which the mode of work could be varied, in respect to

time and manner, and previous notice given of the intention to alter the condition of the property, the extent of the alteration, the manner in which it is to be done and the time, so as to afford the owner of the building an opportunity to take such measures for its protection, as he might see·fit to adopt. The rule requiring care, is not based upon any right of property in adjacent land for support of buildings or otherwise. It is simply a restraint upon reckless and unnecessary conduct in respect to the use of such adjacent property, fraught with danger to the building. Its justification is found in a well established principle, having wide application in English and American jurisprudence, and its application to cases of this kind is as well settled as the doctrine that the owner of a building has no right of support therefor in the land of an adjacent owner. The two propositions are asserted, side by side, in the same decisions, and in practically all of them. All authorities on the subject impose the duty of exercising care in excavating on land adjacent to a building. *Charless* v. *Rankin,* 22 Mo. 566; *Shrieve* v. *Stokes,* 8 B. Mon. (Ky.) 453; *Shafer* v. *Wilson,* 44 Md. 268; *Moody* v. *McClelland,* 39 Ala 45; *Myer* v. *Hobbs,* 57 Ala. 175; *Quincy* v. *Jones,* 76 Ill. 231; *Beard* v. *Murphy,* 27 Vt. 99; *Austin* v. *Hudson River Co.,* 25 N. Y. 334; *Larson* v. *Railway Co.,* 110 Mo. 234; *Obert* v. *Dunn,* 140 Mo. 476; *Booth* v. *Railroad Co.,* 140 N. Y. 267; *Ketchum* v. *Newman,* 141 N. Y. 205; *Spohn* v. *Dives,* 174 Pa. 474; *Witherow* v. *Tannehill,* 194 Pa. 21; *Foley* v. *Wyeth,* 2·Allen 131; *Bonapart* v. *Wiseman,* 89 Md. 12; *Railroad Co.* v. *Reaney,* 42 Md. 117; *Railroad Co.* v. *Bonhayo,* 94 Ky. 67; *Ulrick* v. *Loan & Trust Co.,* 2 S. D. 285, 3 S. D. 44; *Block* v. *Haseltine,* 3 Ind. App. 491; *Bohrer* v. *Harness Co.,* 19 Ind. App. 489; *Moerllering* v. *Evans,* 121 Ind. 195; *Krish* v. *Ford,* 43 S. W. 237; *Bass* v. *West,* 110 Ga. 698; *Davis* v. *Summerfield,* 133 N. C. 352; *Tunstall* v. *Christian,* 80 Va. 1; *Gildersleeve* v. *Hammond,* 33 L. R. A. 46; *Bailey* v. *Gregg,* 53 S. C. 503; *Lasala* v. *Holbrook,* 4 Paige (N. Y.) 169 (24 Am. Dec. 524). The following English decisions allow recovery for negligent excavation: *Dodd* v. *Holme,* 1 A. & E. 493; *Waters* v. *Pfeil,* 1 M. & M. 362; *Massey* v. *Goyner,* 4 C. & P. 321. In this last case, the report says Chief Justice Tindal left three questions to the jury: "First, whether the injury to the plaintiff's house was,

in fact, imputable to the alteration of the chapel; secondly, whether any notice was given to the plaintiff, calling his attention to what was about to be done; and, thirdly, (supposing they should answer both these questions in the affirmative,) whether the defendants had used reasonable and ordinary care in the doing of the work; for, if they had used such care, having given notice to the plaintiff, they would not, in point of law, be answerable for the injury sustained." The jury found the plaintiff had notice, but found a verdict for him which was afterwards entered up on the last count in the declaration, charging negligence.

We come now to the most difficult question involved, namely, the kind of measures to be taken for the safety of the adjacent building and the degree of care to be exercised. On this subject, the decisions are indefinite and fail to indicate, with any degree of certainty or uniformity, what measures are to be taken. This seems, in some cases, to grow out of mental confusion, produced by the rule of property, denying right of support for buildings in adjacent land, and a failure to distinguish between lack of property right in the owner of the building, because he is not entitled to support in the adjacent soil, and the protection for his building which the law gives by imposing restraint upon the conduct of the owner of the adjacent land, in respect to the manner of his doing lawful acts thereon. This right to immunity from injury by useless and negligent conduct seems, in many instances, to have been almost entirely overlooked. Starting with the proposition that the adjacent owner has an absolute right of property, some of the decisions run to these conclusions: that he need do nothing more than exercise such care in digging as not to disturb his neighbor's soil, or cause it to fall into the excavation by reason of its own weight; that he may remove every particle of the soil right up to the wall and along the whole line thereof and let it stand in that condition as long as he pleases, provided the soil itself, unburdened by the building, would not fall in; and that, having done this, if the weight of the building crushes down the embankment and loss results, there can be no recovery. This limits the duty of exercising care to the mere act of digging. It also limits it to the protection of the soil and not the building. It amounts to no requirement of any care at all, in the prosecution of the

work, for the safety of the building, and is in utter contradiction of the universally admitted obligation or duty, on the part of the excavator, to use care for the safety of the building. As to the soil, the questions of negligence and care have no application at all. If the excavator takes away his neighbor's soil, either carefully or negligently, he is liable. In view of this, it is plain that these decisions wholly relieve the excavator from any duty whatever to his neighbor in respect to the building, other than that of abstention from affirmative acts, such as digging over the line under the wall, knocking brick or stone out of it, projecting timbers or other heavy articles against the building, jarring it by heavy blasting, or cracking the walls by driving piling near it. None of these acts relate to the mode of executing the work of altering the condition of the adjacent premises. They are all collateral, and, in a sense, independent, affirmative, wrongful acts, working injury and giving right of redress, whether done in excavating or in connection with some other work. A decision, so limiting the responsibility of the excavator, is found in *Obert* v. *Dunn,* 140 Mo. 476.

Such conclusions seem to result, in part, from misinterpretation of some of the early American cases, such as *Thurston* v. *Hancock,* 12 Mass. 220, *Gilmore* v. *Driscoll,* 122 Mass. 199, *Lasala* v. *Holbrook,* 4 Paige 169, and *McGuire* v. *Grant,* 25 N. J. L. 356. In *Thurston* v. *Hancock,* the plaintiff sought to recover, not on the ground of negligence in the work of excavation, or alteration of the condition of the adjoining property, but merely on the ground that the defendant had taken away the adjacent land. The declaration contained no charge of negligence. It asserted nothing more than a right of support in the adjacent land. After the excavation had been made, the owner of the house had left it and taken it down. The court held he could not recover for anything except the soil he had lost. In *Gilmore* v. *Driscoll,* no building was involved. There was nothing on the land adjacent to the excavation but a fence, a few currant bushes and some modern buildings. After the excavation had been made, a portion of the soil fell away, carrying with it the fence and currant bushes, but not any buildings. The buildings were not endangered, nor did they cause the soil to break away by their pressure. The court

allowed recovery for the soil lost but not for the fence and shrubbery. It was not a case involving the temporary removal of soil and replacement thereof by the foundation of a building, such as we have here and such as is found in so many of the decisions. The question involved was the right of the defendant to use his property, to excavate thereon, and, of the plaintiff, to recover for soil lost and consequential damages in respect to the fence and shrubbery. Under the English and New York cases, the value of the fence and the shrubbery could have been recovered, since, owing to their lightness, they cannot be regarded as having caused the breaking of the soil, *Brown* v. *Robins*, 4 H. & N. 186, *Strowan* v. *Knowles*, 6 H. & N. 454, *Hunt* v. *Peake*, Johns. 705, 70 Eng. Rep. Reprint 603, *White* v. *Tebo*, 60 N. Y. Supp. 231; but the Massachusetts court denied right of recovery as to these. *Lasala* v. *Holbrook* involved a bill in equity to enjoin the defendant from excavating on his property, not adjacent to Christ's Church in New York, but distant from it six feet. It does not appear from the case, as reported, that the bill alleged any negligence or carelessness in the mode of excavation or any other misconduct. Its object seems to have been to prevent the excavation, even though it was done in a proper manner, on the ground of a right to support for the church edifice in adjacent or neighboring land. The answer averred that the defendant was proceeding in good faith, in a reasonable manner, with all possible care and prudence, and had employed skilled workmen. The opinion and holdings in that case must be read in the light of the facts, and the decision is not a precedent for denying, to the owner of the building, right of recovery for injury thereto, occasioned by negligent operation on adjacent property. The chancellor, in delivering the opinion, referred to the English decisions, requiring the excavator to give the owner of the adjacent lot proper notice of the intended improvement and use ordinary skill in conducting the same, and placing upon the owner of the building the duty of shoring or propping it up so as to render it secure in the meantime. He also referred to *Panton* v. *Holland*, 17 Johns. 92. That action involved a case similar to the one we have here. The judgment was reversed on account of an erroneous charge to the jury, but among the principles announced was this: "A person on building a house

contiguous and adjoining to a house of another, may lawfully sink the foundation of his house below the foundation of his neighbor, and is not liable for any consequential damage, provided he has used due care and diligence to prevent any injury to the house of the other." In concluding his opinion, Woodworth, Judge, said: "The result of my opinion is, that the plaintiff has not shown a right to recover damages in this case, unless it be on the ground of negligence, in not taking all reasonable care to prevent the injury. That is a question of fact which has not been submitted to the jury." Accordingly, the judgment was reversed and a new trial awarded. This case does not indicate the degree of care to be used nor the nature of the measures to be adopted by the excavator, as constituting care, or as defining or indicating the degree of care or the extent of his duty in the premises. There is nothing in it which says he may lay bare the whole wall at one fell swoop or dig out his entire cellar so near the wall as to endanger it, before replacing the earth removed with his foundation wall. Notwithstanding this, these decisions have been appealed to for the position, that this mode of alteration may be adopted, and some decisions are predicated upon them as authority for that position. In our opinion, they do not justify it. The only one among them that indicates the measure of care used in *Lasala v. Holbrook,* and, in that case, the utmost precautions were taken. The author of Washburn's Easements and Servitudes, (4th Ed.) at page 596, indicates the possession of more knowledge of the condition of the record in that case than the report of the decision discloses. He says the excavator "must expose only small portions of the soil at a time, as was done in *Lasala v. Holbrook,* where the defendant, as fast as he dug away his soil near the land of the plaintiff, supplied a support by the cellar wall on which he was to rest his house." The answer said the defendant was proceeding with all possible care and prudence.

The view that the excavator's duty does not extend beyond abstention from affirmative wrongful acts, such as we have indicated, seems to rest also upon the admitted duty of the owner of the building, having notice of the work about to be done, to support his own building, if necessary, by bracing, shoring up or underpinning it. It seems to us that this duty

is not inconsistent with the requirement of reasonable care and skill on the part of the excavator. After the latter has exercised reasonable care for the safety of the building, something more may be required to give it absolute security. The excavator is not a guarantor of safety, nor is he bound to the exercise of extraordinary care. His exercise of reasonable and ordinary care would, in most, if not all, cases prevent the building from falling down or sustaining serious injury. Beyond this, there might be slight injury which the owner could prevent by the adoption of additional measures. The necessity for action on his part might be due to pecularities in the nature or construction of his building, not known to, nor readily discoverable by, persons other than himself. The decisions which place this duty of shoring or bracing upon the owner are not to be interpreted as relieving the excavator from the adoption of any means for the protection of the building, for they say he must nevertheless exercise reasonable care in the prosecution of his work, and that requirement of care is for the protection of the building, not the soil, for liability in respect to the soil of the adjoining owner does not depend upon the negligence of the excavator. His liability for that is absolute if he takes, or causes it to slide, away.

The undue latitude seemingly or actually allowed to the excavator in some decisions seems to result also from inattention to differences in circumstances, disclosed in some of the earlier cases, and an attempt to generalize more extensively than the nature of the subject warrants. A case of alteration by excavating and removing the soil on land adjacent to a building for the purpose of replacing it by a wall to be used as the foundation of a new building to be erected at once, is often treated as a mere matter of excavation and nothing more. Now, in cases of this kind it is plain that the excavation and removal of soil is a mere incident of the actual work intended and executed. Nevertheless there is a tendency, in some of the decisions, to deal with cases of this kind on the principles applied to mere excavation and removal of soil or other substance without replacing it, or any intention to replace it, as in the case of an adjoining owner mining the coal from his land, or grading his lot down for use as a lawn, or constructing a bathing pool or fish pond. In instances of the latter

kind, the excavation constitutes the entire work, in so far as it affects the building. It seems to us the difference in circumstances between the two classes of cases calls for a variation of the rules in respect to conduct. In the latter, it would be unreasonable to require the excavator to, in any way, furnish or allow support for the adjacent building, because such support, to be of any value, must be permanent and would therefore amount to the giving of a right of support in the adjacent soil; but it would certainly be reckless and wanton to do the work without giving notice and allowing the adjoining owner time, after notice, to protect his building. In the other class of cases, the support allowed, in whatever form it may be given, whether by removing the soil in sections or the putting up of temporary braces or support, is only temporary. After the new building is up, such support is not, in most cases, necessary at all. It really subserved the purposes of erecting the new building, rather than support, in any substantial sense, to the old adjacent building. Taking an extreme, but not impossible, hypothesis, for illustration, let us suppose the owner of the building, intending to take it down anyhow, has no objection to its being thrown down by the excavator. Not wanting the debris in his way, the latter would naturally use care to avoid cause for its falling. He would save both time and expense by proceeding carefully and even shoring up or bracing it. In these instances, the primary object and purpose is not excavation. On the contrary, it is the erection of a structure, to which the excavation and the temporary support given to the adjacent building are only incidental. To require the owner of the building to prop it up, while the work of removing the soil and replacing it by brick, stone or concrete is going on, in such manner and to such extent as to allow the excavator full latitude to do as he pleases, would be not only unduly and unnecessarily burdensome, but would often subject him to the necessity of marring or injuring his property, to the end that his neighbor might have liberty of action not at all essential to the use he desires to make of his property or his convenience in the execution of his work. He might be compelled to make holes in his wall for the insertion of beams to support it, or to injure the ceiling and internal finishing of his house by the setting of props and braces on the inside, or go down under it at great

expense and inconvenience and place pillars under the foundation. How unnecessary, useless and unequal in this burden, when it is perfectly apparent to all that the excavator, by proceeding cautiously, may prevent the existence of any reason for it? He proposes to take out the earth along the wall and will do so. The placing of a few pillars under his neighbor's foundation, as he goes along, involves to him practically no additional cost for excavation and comparatively little or no expense in setting the pillars, and even this may be unnecessary, if the excavation is followed by the immediate, or close, construction of the wall. We are assuming here the non-existence of any permanent intervening space to be left between the buildings, and such is generally the case in the larger towns and cities. If there is such a space, then the rule of duty might be varied on account of it. If care, in the removal of the earth and building of the wall, is not sufficient protection to the building, in such a case, and an independent excavation and setting of pillars is necessary, the owner of the building might be required to do that, inasmuch as the cost and trouble would be no greater to him, under the circumstances, than to the other party. The objection to requiring one who is excavating along the side of a wall, with the view to building there, to set pillars under the adjacent wall, if necessary, is purely technical. It is said he cannot do this without incurring liability for disturbing his neighbor's soil. In taking out soil and replacing it with stone or brick, he restores all he takes away and does it, in part, for the benefit of the owner of the building. It is not a permanent occupation of his premises, nor is it an act done with an improper motive, nor an occupation at all for the primary benefit of anybody but the owner of the building. In no substantial sense, is it a trespass or a wrongful act, for which reason it might well be overlooked as being beneath legal recognition under the maxim, *de minumus non curat lex.* Can there be no disturbance at all of the adjacent wall? Must the excavator venture at his peril to touch his neighbor's soil? Is it practicable to take every atom to the line and not one beyond? However this may be, there is certainly no insuperable obstacle in the way of requiring the builder to remove his soil and replace it with his structure by sections, or place temporary props on his own side of the line to sustain the building, nor

to restrain him from delay between the removal of his soil and the building of his wall.

Nor is there lack of authority to this effect. In *Austin* v. *Railroad Co.,* 25 N. Y. 334, the work of excavation was commenced in October or November, 1851, and might have been completed within two or three weeks, but was not finished until about August, 1852. The excavation was carried within four feet of the plaintiff's warehouse, but entirely confined to the land owned by the defendant. After the excavation was done, the work was suspended from time to time for considerable periods, leaving the plaintiff's building exposed without protection against the action of water and ice. Piles were driven by the defendant after the excavation had been made, but they were so driven as to crack the walls of the plaintiff's building, which, together with the action of the water, in undermining the building, caused the walls to fall in May, 1852. With proper and sufficient dispatch, the work could have been done so as not to have injured the building. No injury would probably have occurred if, instead of excavating from the cut towards the plaintiff's building, a trench had been dug across the pier at the north end of the building, and the south end wall of the cut built before the excavation was begun. The plaintiff recovered a judgment and it was affirmed. Allen, Judge, said whatever were the rights of the defendants in the occupation and improvement of their own premises, they were held to ordinary care and diligence in such occupation and improvement. A party is not excused from the consequences of his own negligence by the fact that the negligence occurred upon his own premises, and in the performance of an act lawful in itself. A lawful act may not be performed in a careless and negligent manner to the injury of a third person with impunity. In *Shrieve* v. *Stokes,* 8 B. Mon. (Ky.) 453, the court held that evidence of what was usual and customary in cases exactly similar to the one on trial was admissible, and that usage and even the opinion of skilful men is admissible as to the manner of digging and removing the earth. After having said this, the court proceeded to limit the requirement of care to the mere act of digging and removing the earth, as if that were the only thing involved in the case. The contradiction between this conclusion and that expressed in the New York case is obvious.

*Charless* v. *Rankin,* 22 Mo. 566, 66 Am. Dec. 642, has been interpreted as indicating that the excavator must, in Missouri, carry on the 'work in sections or be answerable for the consequences, unless he gives reasonable notice that he will pursue another method, 33 Am. St. 468, note; but the opinion in that case seems to say the excavator need not take such a precaution nor any other except to dig carefully. Nevertheless, the court held he was bound to use ordinary care to avoid doing harm to his neighbor's building, and also that it was error to instruct the jury that he was only bound to use such care as his builder, who was a skilful and careful person, deemed necessary. We are unable to see how the latitude allowed him in every way, except as to the act of digging, could afford any protection or require any care at all for the safety of the building. There are decisions, however, 'which, recognizing the legal principle, imposing duty upon the excavator to exercise care for the safety of the building, and giving substantial effect to it, say he must adopt measures for its protection, not any particular plan, but some plan amounting to ·a reasonable and prudent effort to avoid injury. ·In *Davis* v. *Summerfield,* 131· N. C. 352, the court said: "It is negligence to excavate by the side of the neighbor's wall, and especially to excavate deeper than the foundation of that wall, without. giving the owner of the wall notice 'of that intention, that he may underpin or shore up his wall, or relieve it of any extra weight on the floors, and the excavating party should dig out the soil in sections at a time so as to give the owner of the building opportunity to protect it and not expose the whole 'wall to pressure at once." In *Bass* v. *West,* 110 Ga. 698, it appeared that the sill of 'the plaintiff's building was rotten, but, notwithstanding this obvious fact, the defendant continued his excavation, without adopting any measures to prevent injury to the building, and the supports slipped off into the ditch dug by him and caused the roof to sag and some of the plastering to fall. On these facts, the court said: "We think this evidence warranted a finding that the defendant failed to take reasonable precautions and to exercise ordinary care, in making the excavation, to prevent injury to the building occupied by the plaintiff." In *Gildersleeve* v. *Hammond,* 33 L. R. A. 46, the court stated facts and expressed its opinion as follows: "Broadly and fairly stated, the defend-

ant's contention is this: They had the right to excavate to the depth of seven or eight feet in this sandy and gravelly soil, the entire fifty-two feet without any effort to prevent the plaintiff's soil from caving in, to draw it away as it fell until it had fallen to a distance from four and a half to five feet from the boundary line and reached directly under her foundation wall, and that this was an excavation in the usual manner and with ordinary care. The proposition does not commend itself to our judgment, nor does it seem to us to be based upon sound reason, common sense and common honesty, which are the foundation of the common law. Nor do we think that the authorities sustain the proposition. On the contrary, we think that such conduct is negligence *per se,* bordering upon recklessness. It is established by the evidence that the caving of the soil could have been prevented by the defendant at an expense of from fifteen to twenty-five dollars." But, having said this and allowed recovery, the court seems to have limited the duty to the mere protection of the soil. In *Block* v. *Haselltine,* 3 Ind. App. 491, the facts are not stated fully enough to show just what the evidence was, but the decision proceeds upon the theory that it is negligence to excavate along the whole line of a wall and so expose it to danger, for the text of Washburn on Easements & Servitudes, saying the excavator must expose only small portions of the soil at a time, is quoted and applied. In *Bohrer* v. *Harness Co.,* 19 Ind. App. 489, the negligence consisted of the piling of brick in the gutter of the street so as to cause the water to flow into the excavation, in consequence of which the soil became softened under the wall, and the judgment was affirmed. The cause of the injury in *Ulrick* v. *Loan & Trust Co.,* 2 S. D. 285, 3 S. D. 44, was similar and the judgment in that case was affirmed. In *Spohn* v. *Dives,* 174 Pa. 474, the court said the case was for the jury, since the evidence tended to show that defendant's excavations were carried considerably beneath the level of plaintiff's foundation; that some of the soil under plaintiff's foundation fell out; that no measures whatever, looking toward the support of plaintiff's wall, were taken by defendant until part of the soil supporting it on defendant's side had been removed, nor until the wall showed signs of giving away, and the chimney attached to the kitchen had actually fallen; that, afterward, two hori-

zontal props were run in under the brick part of the wall, upheld on defendant's property and in plaintiff's cellar by perpendicular posts, that at some time two or three or more other props were placed against the wall slanting upwards from defendant's property; that neither of these expedients taken alone, nor both of them applied simultaneously, were reasonably sufficient, according to described customary methods, to prevent the structure from sinking; and that the structure was injured by sinking. In that case, it was held to be the duty of the excavator to notify the owner of the building to protect his property, but the statement of facts does not show whether any notice of intention to make the improvement was given or not. Hence we think the matter of notice did not enter extensively into the decision. *Witherow* v. *Tannehill,* 194 Pa. 21, was somewhat similar in its facts and the conclusion was the same. Nothing is said in it about notice. See also *Moody* v. *McClelland,* 39 Ala. 45. Though, in all these cases, there was more or less timidity on the part of the courts in the assertion of duty, on the part of the excavator, to adopt reasonable measures for the safety of the building, there can be no doubt that the decisions in most of them proceed upon that theory.

The adoption of these principles is simply the recognition and adjustment of court action to that which is so obviously just, fair and reasonable that the parties themselves generally accommodate themselves to it without controversy or compulsion. We have testimony to this effect in the record in this case. The architect who prepared the plans for the defendant's building said: "My usual way of doing that work was going under the wall and underpinning it, that is, going down and dig a hole four feet wide down by the side of the building to the depth we were to go with the basement and after getting under the wall to build up a tier and then sink another place six or eight feet deep and dig another hole and doing the same thing, and then go back and dig the space between and go on." An expert witness said, in response to a question as to the usual, ordinary, prudent and workmanlike way of doing such work, the work ought to have been done in sections or some other way to have secured the bank from dangerous caving. Another said the ordinary safe methods to be used in excavating a site for a building of the character described would be to sheathe or brace

the earth or put up the wall in sections as they went along, excavating a short distance at a time. In *Gildersleeve* v. *Hammond*, 33 L. R. A. 46, the court said the evidence on the part of the plaintiff showed that, in excavations like the one involved in that case, it is common to use one of two methods, building the wall in sections, or planking to keep the soil in place, and also that it is a matter of common knowledge and that an experienced builder had aptly expressed it by saying "It is a custom of common sense. It is a general custom." No doubt the evidence of negligence in some of the cases in which recovery has been allowed, but in which the evidence is not disclosed, consisted of the absence of precautions of the kind indicated here. The fairness and justice of this rule are indicated, not only by the readiness and willingness with which builders generally adopt it, but by other considerations which suggest themselves to the thoughtful mind. It is easier and less expensive for the excavator than the owner of the building. The former has his men, tools, appliances and materials upon the ground and is working in the open, with room and freedom of action, while the latter would have to go out and employ men and assemble tools, appliances and material for the special purpose and do the work under disadvantageous conditions and at the risk of marring a finished building. To compel him to stand by and underpin his building as the work of excavation is prosecuted by the other party would be rediculous, in view of the fact that the other can proceed as leisurely as he pleases, while the men employed by the owner of the building must stand back and wait on them. If it be suggested that he may send his men ahead and make his own excavation, they must make excavations, for the purpose, which the other party would make himself, or they must, in some way, get under the building and shore it up, and this would be a difficult thing to do in many cases. Nor do we see any force in the contention that it compels the excavator to furnish support for the neighbor's building. To require diligence in the prosecution of the entire work, not the mere digging, the removal of the earth by sections or otherwise so as to afford protection to the building and the setting of props, if necessary, does not give a right of support for the building in the adjacent land, in any real or substantial sense. It is merely temporary and

incidental to the work of erecting the new building. It is simply a restraint placed upon conduct, the manner of doing a lawful act. Nor is the expense it involves · greater than is imposed, upon the same ground, in many other instances.

Much of the confusion in the decisions seems to grow out of uncertainty in the minds of the court concerning the function of notice to the owner of the building. Some of them seem to say the excavator, after having given notice, or if the owner of the building has knowledge of his intention, may proceed with his work in any manner he may choose, and it is then the duty of the owner of the building to take care of himself. We have already said enough to indicate the inconsistency of this position with the views we entertain. He ought to have notice so that, after the excavator has done all that is reasonably prudent for the safety of the building, he may adopt additional measures so as to make himself absolutely safe, to give him an opportunity to do those things which the excavator is not bound to do. Nor, in speaking of notice, do the authorities seem to observe the distinction that ought to arise from the circumstances. If the excavator intends to put nothing in the place of the earth he removes, and he is not bound to do so, the owner of the building ought to know that. If he does intend to replace it with a building, the owner of the adjacent building may well assume an intention on his part to do those things which he ought to do for the temporary incidental protection of the building. In the other case, he would naturally assume the contrary. And in the case of an excavation for a building, the neighbor ought to be informed, not only that the excavation was being made for that purpose, but the depth to which it is proposed to go below his own foundation. In view of these considerations, we think, the decision, holding the duty to give notice of the excavator's intention to be an additional precaution, and denying to it the force and virtue of a substitute for the other duties, incumbent upon the excavator, are sound. This view was taken in *Bass* v. *West,* 110 Ga. 698; *Block* v. *Haseltine,* 3 Ind. App. 491; *Ulrick* v. *Loan & Trust Co.,* 2 S. D. 285, 3 S. D. 44; and *Massey* v. *Goyner,* 4 C. & P. 161. In *Lasala* v. *Holbrook,* the chancellor said the English rule required the excavator to give to the owner of the adjacent lot proper notice of the intended improvement and to use ordinary

skill in conducting the same. This makes it cumulative. The following observation of the court in *Bonaparte* v. *Wiseman,* 89 Md. 12, 23, seems to be to the same effect: "If one about to excavate his own lot do it or cause it to be done so carefully as not to injure the adjacent houses he need not give notice to their owners; if, on the other hand, he give timely notice to the adjacent owners the burden will be thrown upon them to protect their own property and he will not be liable for damages sustained by them if he makes the excavation with reasonable and ordinary care."

As the condition of the injured building often injects other questions into cases of this kind and is relied upon here as matter of defense, we observe that defectiveness or weakness in it does not justify negligence or reckless conduct on the part of the adjoining owner, in altering the condition of his property, or excuse him from liability for injury occasioned thereby. He is governed by the condition of the building as he finds it, and must conduct his operations accordingly, for these conditions have been previously and rightfully made. To hold otherwise would give one adjacent owner the power to determine what sort of a building his neighbor should erect or in what state of repair he should keep it. Defects in the building may be such as to contribute to its injury in case of the removal of the adjacent earth, but the act of constructing it in an unskilful manner, or allowing it to become defective, would not be the proximate cause of the injury, if it could be deemed negligence. There would be two causes of injury in such case, but the negligence of the excavator, in failing to take reasonable precaution for the safety of the building, however defective it might be, would be the last cause of injury, the nearest in time and, therefore, the proximate cause. Defectiveness of the injured building may mitigate the damages but it does not bar an action for the injury. "But where it is alleged and proved that the defendant so negligently, unskilfully, and improperly dug his own soil that the plaintiff's house was thereby injured, an action lies: and although it be shown that the house was infirm, and could at all events have stood only a few months, still the plaintiff may recover in proportion to the loss actually suffered, if the jury find that the injury to the house was the consequence of the defendant's negligence; and in determining

the question of negligence, the jury ought to consider the state of the plaintiff's house." In explanation of the last clause of this quotation, it is necessary to quote from the opinion of WILLIAMS, Judge, delivered in the case, who said: "If it was proven that the premises could have stood only six months, the plaintiff still had a cause of action against those who accelerated its fall: the state of the house might render more care necessary on the part of the defendant not to hasten its dissolution." In *Shafer* v. *Wilson*, 44 Md. 268, the court said: "Although the plaintiff's house be in a bad condition, the defendant has no right to hasten its fall by making improvements on his own lot in a careless and negligent manner." See also *Walters* v. *Pfeil*, 1 M. & M. 362.

As the nature of the business carried on in the building involved in this case is relied upon as matter of defense, or rather as having contributed to the injury directly and indirectly, it becomes necessary to consider it in the light of that contention. It seems to us that the right to do business in the building stands upon the same legal ground as the building itself. Neither has any right of support in the adjacent soil, but if the building is entitled to protection from negligent conduct on the part of the adjoining owner, it seems to follow logically that the business he or his tenant carries on in it is entitled to the same protection. The use of the building for a lawful purpose is a valuable right, and the same legal principles that protect buildings should protect the use and enjoyment of them and those vocations which men see fit to follow. No reason is perceived, therefore, why the excavator should not take notice of the apparent use to which a building is devoted and conduct his operations accordingly. It is suggested in some of the decisions that the owner of a building, seeing an excavation about to be made on adjacent land, or having been notified of the intention of his neighbor to excavate, may add to the security of his building by removing from it any weighty article he may have there, but it is generally found in those decisions which erroneously, as we think, confine the requirement of care and prudence to the mere act of digging and absolve the excavator from all duty to do anything for the temporary support of the building. In our view, it is unreasonable, because practically unnecessary, to require the owner of a building to move the contents out and

suspend business, to enable his neighbor to alter the condition, if his premises. Such a rule would run to absurdity and ridiculousness. That it is not the usual practice is matter of common knowledge. Bearing in mind, however, that the excavator is required to exercise only reasonable and ordinary care, it may be that, under some circumstances, it would be unreasonable to require him to take upon himself the burden of temporarily supporting, or providing for the safety of, a building subjected to a peculiar or extraordinary use. We are, therefore, of the opinion that, ordinarily, the excavator must take notice of the obvious use to which a building is devoted and govern his conduct accordingly, exercising reasonable and ordinary care for its safety in the condition in which he finds it, and has no right to require a cessation, during the period of his operations, of the business, carried on in it.

Another ground of defense, requiring consideration of a general principle, is that the acts from which the injury resulted, were done by independent contractors. Generally, the employer is not liable for the wrongful act of an independent contractor, but there are exceptions to the rule. "If the injury results directly from the acts called for or rendered necessary by the contract, and not from acts which are merely collateral to the contract, the employer is liable as if he had himself performed such acts." 16 A. & E. Enc. Law 196. If the employer actually controls the manner of doing the work, the employment is not independent. *Id.* 187. "A person or corporation on whom positive duties are imposed by law cannot avoid liability for injuries resulting from failure to perform such duties, by employing a contractor for the purpose; nor, in such case, is the fact that the injuries resulted from the contractor's negligence a defense." *Id.* 197. "It has been decided in some cases that adjoining owners owe certain duties to each other which cannot be delegated to a contractor. So it has been held that one who is bound to remove a wall to avoid injury to neighboring property cannot exempt himself from liability by making a contract for the removal of the wall." *Id.* 200. From the conclusions we have expressed, concerning the duties a land owner owes to a neighbor in respect to his buildings, when making improvements on his adjoining property, it might follow that these, although not arising out of any right of property

in the adjacent soil are non-assignable. Accordingly it has been held in Maryland that cases of this kind are exceptional, and that the employer is liable if the resulting injury was such as might have been anticipated as the probable consequence of his work directed to be done, whether he prescribed the mode of doing the work or not. *Bonaparte* v. *Wiseman,* 89 Md. 12. But, if cases of this class are not to be excepted from the general rule, on the ground suggested, the employer is nevertheless liable, when the contract prescribes, not only the thing to be done, but also the manner in which the work is to be executed, and the contractor does it in the manner so specified, for then the will of the employer controls and he directs and orders the injurious and wrongful act, if it is wrongful. The following building contract cases clearly enunciate this doctrine: *Aston* v. *Nolan,* 63 Cal. 269; *Mathias* v *Hamer,* 65 Ill. 484; *Watson Lodge* v. *Drake,* 29 S. W. 632; *Harrison* v. *Kiser,* 79 Ga. 588. As the case in hand falls within this principle, it is unnecessary to carry the inquiry further.

Denial of right of recovery is also based on the fact that plaintiffs were only tenants of the building, without a contract, fixing a definite period of tenancy. As the owner of property may, by a lease or otherwise, vest in strangers rights respecting it, large or small, according to his own will and pleasure, and the rights so vested are recognized and protected by law, it would be inconsistent and illogical to say a lessee of a building cannot claim, to the extent of his interest in the use and enjoyment thereof, that protection which the law extends to the owner. Though he is not seized of a freehold estate and is not owner of the land or the building, his right of enjoyment of the same is a valuable one, protected by law, as is also his term. Nor does it seem to us that there is any difficulty, on principle, in reaching the conclusion, that such an interest may be vested in respect to a single floor or room of a building or that a right of possession and use under a verbal lease or letting, as by the month or at will, gives a right of protection. These circumstances make no change in the principle involved. The utmost effect they can have is to vary the extent of the interest and so limit the right of recovery in respect to its amount, making it commensurate with, and restricting it to, the injury done to the plaintiff, which, of course, cannot exceed his interest or

right. If, by the negligence or wrongful act of the adjoining owner, a stranger, or even the landlord, he is deprived of his term, the law gives him compensation in damages, whether the term be long or short, and if he occupies as a tenant at will only, he should have, at least, nominal damages, for his right has been invaded and injured or destroyed. Nor is any reason perceived why he should not be permitted to recover in addition to compensation for the loss of his term, be it small or great, consequential damages, resulting immediately and directly from the wrongful act done, such as those emanating from the loss of personal property on the premises. Such damages are in no sense remote and speculative. The injury is the direct, immediate and proximate result of the destruction of the premises. These views are fully sustained by authority. *Bass* v. *West,* 110 Ga. 698; *Austin* v. *Railroad Co.,* 25 N. Y. 334; *Stevens* v. *Brown,* 14 Ill. App. 173; 1 Cyc. 783; Suth. Dam., section 1012.

In view of what has been said, the sufficiency of the declaration is apparent. It sets forth the relation of the adjoining owners, the interest of the plaintiffs as tenants of the second floor of the building, the acts done by the defendant and says he, by himself, agents, employes and servants, injuriously, wrongfully, carelessly and negligently dug out and carried away the soil immediately adjoining the west wall of the building and made a deep excavation on his lot the whole length of the building, and allowed a great volume of water to stand in it for about six days by means of which the building was made to fall to the ground, damaging and destroying the property of the plaintiffs contained therein. No defect is specified in the briefs. There is a mere general criticism, accompanied by a suggestion that consequential damages are not recoverable, since no term is alleged and defined, giving a right to substantial damages for injury thereto or destruction thereof, but the right to nominal damages alone clearly sustains the declaration, and we have no hesitancy in saying consequential damages are recoverable in such case.

The defendant owned a valuable business lot, situate in Williamson, facing for fifty feet on Second Avenue and running back between parallel lines to an alley, a distance of one hundred feet. On one side of this lot was the property of one White, a two story brick, on the other side was the property of the plain-

tiffs' landlord, Bronson, consisting of a lot facing the Avenue for twenty-five feet and running back to the alley, and a two story brick store building covered the entire area of his lot from the street back eighty-five feet. On the second story the plaintiffs were conducting a newspaper business and had therein articles weighing, as testified to by the depot agent, 17,216 pounds. The large printing press weighed two and one-half tons. The Bronson building was not well constructed. Its foundations, instead of being placed from two to two and one-half feet deep, and below the frost line, were only five or six inches deep. Water backed up against the side of the building farthest away from defendant's lot. There were no gutters nor down spouts, the water running down on all sides of the building. The storms saturated the walls and the stagnant water the foundations. There was found an old crack in the foundation at the rear where a hydrant was allowed to waste water, showing a complete separation. On the side next to defendant's lot, the wall was seventeen inches thick to the second floor and only twelve inches from the first story up and on the other side only twelve inches from the bottom of first story to the top. The side walls were not anchored together. Only two anchors were found in the building. The experts agreed that there should be an anchor for every fourth or fifth joist on both stories. The office of these anchors is to prevent the walls from bulging and separating,—to hold them fast together. Again, it was shown that the joists had no pillars or other supports, and extended from one wall to the other, a distance of twenty-three feet. The joists had but one row of bridging, when the witnesses testified that a span of that length should have had at least three rows of such bridging. The bridging unites the joists and makes them all rigid, spikes them together and forms braces both ways so that it will distribute the load, and makes it is of one body. In other words, the anchors and bridging make the building a unit and give solidarity. After the building fell it appeared that the brick were practically free from mortar and the mortar was found very poor in quality, mashing easily between the fingers. The machinery, when in motion, caused the building to shake so that people on the second story would feel uneasy for their safety, and this vibration shook loose the window panes on the story below.

The defendant, desiring to improve his lot, employed J. B. Stewart, a well known architect of Huntington, to examine the situation and prepare plans and specifications for an expensive building. These plans provided for a basement and a retaining wall from four to five feet distant and running parallel with Bronson's building. This wall was to be of concrete. He employed Tyree, Greer, Lambert and Williamson, men of large experience in their line of work, to do the excavating and put in this retaining wall and other concrete work. It was shown that here were two ways, both approved methods, whereby the adjoining building could be protected. One was by shoring up, or underpinning, the building. This plan involved the placing of pillars under the side wall. The other method was adopted, viz: that of providing a retaining wall. The contractors put in this retaining wall in sections. As the trench was dug the concrete followed and the wall was completed in perfect condition. The retaining wall was one foot thick and stood four or five feet from the Bronson building. A similar arrangement was made on the other side, next to the White building. Then practically all the earth between the two retaining walls was removed, after which the work was suspended for some time, and frequent rains caused considerable water to collect in the excavation. The excavation was nine or ten feet deep. About twenty-one days after the completion of the retaining wall on the Bronson side, the building fell.

Further description of the retaining wall and a recital of the substance of a portion of the evidence are necessary to a clear understanding of the rulings complained of. The concrete retaining wall ran back the full length of the Bronson building, distant therefrom four or five feet. It then turned at right angles and went straight to the rear corner of the building and across the division line a few inches, and then, turning again at right angles, went straight back a few feet beyond said corner. From the corner back to the terminus, the concrete wall was intended as a foundation wall and was seventeen inches thick, corresponding with the brick wall of the Bronson building. The balance of the concrete wall was put in only to protect the Bronson wall, and was only twelve inches thick.

The work was done according to plans, prepared by an architect at the instance of the defendant. The man who did the ex-

cavating was paid by the yard, but did the work in accordance with plans, handed to him by the defendant to show the depth and stakes set by the defendant's engineer. The plans called for the location of the concrete retaining wall four feet from the Bronson wall and the man who excavated for it says he cut the trench four feet from said wall.

There is considerable testimony, tending to show that the building gave way at the rear corner, to which the excavation was carried. Walker, one of the plaintiffs, says he was at work on the second floor, when his attention was directed to the fact that the building was about to fall, just a few minutes before it actually collapsed, and then observed the top sill of a window in that corner had cracked and that the corner was sinking, that the wall at that corner slid down into the excavation, and that the condition of the window showed that corner was sinking. Blackburn, the other plaintiff, says substantially the same thing, and, further, that he then went down on the ground near that corner and watched it, until the building fell, observing that it began to give way at that point and the bottom part of the wall slid into the excavation and the top fell over in the opposite direction, that is, from the excavation. He also says the window, mentioned, was only about one foot from that corner. The witness Dudley also watched that corner as the building fell and says all the walls were springing, but that corner "seemed to be giving away faster than any other part of the structure" at the time the building fell. Palmer, another witness, says "Well, it looked as if the back corner of the building was going to fall. I had no idea that the whole building would fall;" and, further, "At first it looked as if it was going to fall over in the basement, and then the whole wall sunk it looked like probably from the front to the back. The rear end sunk faster than the front end. It sunk in that corner and give a quick jump towards the basement and the wall pitched the other way. The lower end of it slid down, but the wall fell the other way." J. B. Stewart, defendant's architect, testifying to what he observed at that corner after the fall of the building, said "I think a flue that is shown there, that was broken. The rest of the wall was standing." The question he was answering pertained to the concrete wall, part of which was a retaining wall and the balance a foundation wall for the new building. Pur-

suing this subject, he said "Right at this point (indicating), right near the Bronson building," and, again, "When this building went down this fracture right there and right there, these two points, gave way and this piece was leaning over a little bit, enough to let this wall down." E. C. Greer said "Well, this wall of Bronson's where the building fell had slid the dirt down about two feet, and the retaining wall was broken in two laying over in the cellar. The bottom of the wall was standing where it was put in. I had to take wedges and sledge hammers to burst it apart and get it out of there." The concrete foundation wall, back of the Bronson corner, was uninjured and afterwards used for the purpose for which it had been put in. At this corner, the retaining wall ended and the foundation wall began and ran on back of the Bronson building.

Exception was taken to the action of the court in refusing twelve instructions asked for by the defendant. Instructions Nos. 1, 2 and 5 are binding and proceed upon the theory of no right of recovery in the plaintiff, if, in the opinion of the jury, the excavation would not have caused the soil to cave in or fall away by its own weight. They would have relieved the defendant of any duty to exercise care and caution for the safety of the building. There is a reference to care and prudence in Nos. 1 and 2, but not in respect to the safety of the building. They would have denied right of recovery, if the jury had found the excavation was made in an ordinary prudent manner. They should have said "and with reasonable care and caution for the safety of the adjacent building" or something else sufficient to direct the attention of the jury to the duty resting upon the defendant to exercise such care for the safety of the building. That they were improper is obvious, since they leave out an important element, and would have tended to mislead the jury. No. 2 puts in the additional element of actual knowledge of the beginning and progress of the work by the plaintiffs. As we have shown, neither actual nor formal notice, given by the defendant himself, would have relieved him of liability for negligence and unskilfulness. No. 5 would have denied right of recovery if the adjacent land would not have fallen without a building on it. Under the conclusions already expressed, it was wrong. The object of instruction No. 6 was to impress upon the jury the failure of the excavation to injure another

building adjoining the lot on the other side.    This was not
permissible.    That the other building 'was not injured was a
fact in evidence for the consideration of the jury.    A reference
to it in an instruction could have had no other effect than to
give it peculiar weight, and instructions bearing on the weight
of evidence are objectionable.    Besides, the proof shows the
excavation was not made so close to the other building as it was
to the one that fell and that the retaining wall on that side
was heavier.    Instructions Nos. 8 and 17 were binding and pro-
ceeded upon the theory of contributory negligence on the part of
the owner of the injured building in that the drainage from the
roof was not so arranged as to prevent the water from the roof
from draining or running into the excavation, and other defects
in the building and the use made of it.    These were circum-
stances imposing added or increased duty upon the excavator.
Imperfect construction or arrangement or the bad condition of
the adjacent building does not relieve the excavator from duty
in the premises.    He must deal with it as he finds it, exercising
such ordinary care and caution as the circumstances and condi-
tions suggest.    Under some circumstances, defects in the injured
building may have the effect of mitigating the damages, but not
of relieving the excavator from duty.    In other words, they do
not bar recovery.    The court properly refused these instructions
for another reason.    No. 16, given, covered the subject matter
of both.    Instructions Nos. 10, 11 and 12 were intended to
exonerate the defendant on the ground of liability on the part
of the persons employed by him to do the work as independent
contractors.    We have already shown that the employer, by the
terms of the contract, had directed what was done and prescribed
the manner of doing it.    Greer, who dug the trench for the
retaining wall, and other parties who followed him up with the
concrete, had no discretion, and there is no evidence that they
departed from the plan, given them, or the stakes, set in the
ground.    Instructions No. 7 and 14 were violative of the prin-
ciple applied in disposing of Nos. 8 and 17.    They would have
told the jury that if they believed the running of machinery in
the building was a concurrent and contributory cause of the
injury with the excavation and were unable to say which actually
caused it, or should believe the former caused it, they should
find for the defendant.    To what has been said on this subject

it may be added that these instructions are confusing and misleading in this. They ignore the duty to use care for the safety of the building. They should have presented the inquiry as to whether the· defendant exercised reasonable care for the safety of the building .in the condition in which it ·was and subjected to the use to which it was devoted. Knowledge or ignorance, on the part of the defendant, of the use of machinery in the building, is not adverted to by them. They are entirely too narrow as well as otherwise misleading.

Defendant's instruction No. 15 should have been given. It was intended to inform the jury that unless the injury was the natural and probable consequence of negligence or a wrongful act on the part of the defendant and such consequence ought to have been foreseen by him in the. light of the attending circumstances they must find for the defendant. This proposition was not submitted in: any other instruction. It is absolutely sound, and no ground upon which it could properly have been refused is perceived.

Plaintiffs' instructions Nos. 1, 2 and 4 are complained of. The last one is good, but the others are too indefinite in respect to the degree of care exacted. No. 1 told the jury the defendant was bound "to take proper care to avoid injury to the structures on adjoining land" and No. 2 that he must use "due care and skill * * * so as' not to damage the building." He is not a guarantor of the safety of the·building, and the extent of his duty is to exercise reasonable and ordinary care for ,its safety, in view of all the circumstances, known to him or which he ought to have known. If the owner of the building desires further protection for it, he must furnish it himself. The instructions, as given, allowed the jury too much latitude. They would have construed the instructions to mean that the excavator must protect the buildings at all hazards, and make them absolutely safe. In view of the failure of the defendant to have the degree of care defined, as he could have done, ·we would probably not reverse for this, if it were the only error, but, as the judgment must be reversed for another reason, we sustain the exception to these two instructions.

Bills of exception furnish grounds for numerous complaints, concerning the admission and exclusion of evidence. The opinion of Walker, one of the plaintiffs, as to what caused the building

to fall, was admitted.   By reference to the substance of Walker's testimony, hereinbefore set out, it will be seen that he was giving more than a mere opinion.  He was stating an impression, a conclusion or conviction, produced by what he saw on the occasion of the fall and immediately afterward on an examination of the premises.   It is fair to say he could neither recollect, nor accurately state, all he observed, so as to get it before the jury. Having more knowledge of the facts than the jury could possibly obtain, he was within the exception to the rule against opinion evidence.  *Kunst* v. *Grafton,* decided at this term.   A witness was permitted to testify as to the condition of the machinery and type after the fall of the building.   The objection to this rests upon the view, entertained by counsel, that no recovery of consequential damages could be had.   It is obviously untenable.   The admission in evidence of a conversation between the defendant and Bronson, the owner of the building, while the work was going on is another ground of complaint.  This pertains to an admonition or warning given the defendant by the owner of the building.   If it occurred, it directed the attention of the defendant to the character of the work he was doing, and might be regarded by the jury as an express demand that he exercise more care.   It may not have been highly material, but no error is perceived in the admission of it.

The depositions of certain expert witnesses were taken in advance of the trial and read in evidence.   Hypothetical questions having been propounded to the witnesses and answered, their answers in the depositions were admitted over objection of the defendant.   It is said the opinions of these witnesses could not properly be taken in that way, because the evidence of the facts embodied in the questions had not then been introduced. It was subsequently introduced, however, in the trial in which the answers were introduced.   No authority is shown, holding it improper and inadmissible to anticipate the introduction of evidence.   Those submitted for the proposition do not sustain it.   They say opinions of expert witnesses must be based upon evidence, but not that the introduction of the evidence must precede the taking of the expert opinions.   Failure to introduce it on the trial would render the opinions, based on assumed facts, inadmissible of course; but no instance of failure in this respect is perceived.   The proposition contended for would

render it impossible ever to obtain the benefit of an expert opinion by means of a deposition.

Objection was made to testimony relating to the condition of the weather at the time the excavation was made. This was obviously material, relevant and proper, since what would be prudent and careful operation in dry weather might be reckless and negligent in wet weather, softening and weakening the soil.

The court refused to permit a witness to state whether the plan prepared by the architect made reasonable and ordinary provision for the safety of the building; another, to give his opinion as to the effect of the operation of machinery in the building; another, the man who did the actual work, to give his opinion as to whether the work was done in a safe and prudent way; and another, as to whether the retaining wall built was sufficient to protect the building, and whether the work was done in an ordinarily prudent way. In none of these instances, did the defendant indicate what the answers to the questions would have been. No authority need be cited to show the inability of this Court to reverse a judgment, for rejection of evidence, when the record fails to show what the rejected evidence was. We cannot assume the answers to those questions would have been favorable to the defendant.

Evidence of the terms of the contract between the defendant and the man who did the excavating was rejected. We have already shown he was employed only to dig in the manner prescribed by the defendant's plans and directions. For this reason, the rejected evidence did not constitute any ground of defense, though it would have been admissible for the plaintiff, and the ruling was, therefore, not prejudicial. The action of the court in striking out testimony of the defendant to the effect that the business of the man whom he had employed to do the excavating was "excavating dirt" was harmless for the same reason.

Exclusion of the plans and specifications is the ground of further complaint. There was no error in this. The defendant had already introduced a blue print of all of the plans that was material or shown to be material, namely, the ground plan, showing the temporary retaining wall.

For the error in rejecting defendant's instruction No. 15,

the judgment must be reversed, the verdict set aside and the case remanded for a new trial.

### ON PETITION FOR RE-HEARING.

In the petition for re-hearing, it is strongly urged that the trespass to the soil was an invasion of an absolue right of the plaintiffs, imposing liability in any event, whether done negligently or carefully, and that, therefore, the court properly refused instruction No. 15, applying a rule of negligence. It suffices to say, in reply to this, that the plaintiffs had no interest in the soil. They were mere tenants of the second floor of the building, wrongfully injured, if at all, by failure to exercise reasonable care for the safety of the building.

As the general principles declared here are favorable to the defendants in error and their judgment is reversed merely for refusal of an instruction, they complain of the adjudication of costs against them in this Court. It may be that, owing to the magnitude of the record, the costs here will almost equal their recovery, in case they finally prevail in the litigation, but we are unable to perceive, in this circumstance, any reason for a departure from the statutory rule, giving costs to the party substantially prevailing in this Court. It is the result of the litigation, not the reasoning of the Court nor the importance of the principles involved or decided, that determines the liability for costs.

A cross-assignment of error, not noticed in the opinion, is made one of the grounds of the application for a re-hearing, but, as the judgment has been reversed on other grounds, and the subject matter of the cross-assignment can be important only on the new trial, it may be disposed of on this petition, without a re-hearing. On a very large part of the property injured and destroyed, there was a deed of trust, securing the payment of purchase money, in which A. C. Pinson was the trustee. At the time of the trial of this case, he had another action pending for damages to the property covered by said deed of trust. Having proven that fact in the case, the defendant moved the court to exclude all evidence, relating to that part of the property, and direct the jury not to find any damages on account thereof, and the court sustained the motion. Pinson's action

was second in point of time, since the declaration in this one was filed in December, 1906, and the summons in his was issued March 8, 1907. "The original or first suit cannot be abated by a plea that another action for the same cause was afterward commenced." 1 Cyc. 45, citing numerous decisions for the proposition. This seems to be decisive of the question raised by the exception, the court having excluded the evidence, because of the pendency of another suit, and, apparently, not because of supposed inability of the plaintiffs to sue, the legal title to the property being in the trustee, and they having only an equitable title. However, this question is suggested in the briefs and should be decided.

That an equitable owner of personal property in possession thereof may sue a stranger, in trespass on the case, for an injury done to it by him, seems to be well sustained by both reason and authority. Independent of his equitable title, he has a special title or interest, his right to possession and use, which is invaded to his injury, and the gist of the action is injury to the possession. *Clay* v. *City of St. Albans,* 43 W. Va. 539; *Wilson* v. *Phoenix Powder Mfg Co.,* 41 W. Va. 413; 1 Chitty Pl. (11 Am. Ed.) 60-64; Sutherland on Dam., section 1097. From these conclusions, it follows that the court erred in excluding this evidence.

We deem it unnecessary to enter upon an inquiry as to the *quantum* of damages such an owner may recover, or the effect of an adjudication in the second suit before judgment in the first, since the record does not disclose what has been done in the other action. For all we can see, it may have been disposed of by this time. But the authorities here cited clearly indicate the rights of the parties under all possible circumstances.

We refuse a re-hearing.

*Reversed and Remanded for New Trial.*