## Hellier, et al. v. Syck, et al.

(Decided April 16, 1912.)

### Appeal from Pike Circuit Court.

1. Land—Divisibility Without Impairing its Value—Presumption.—In an action by two plaintiffs to recover a one-fifth interest each in a tract of 183 acres of land, the presumption is that the land may be divided without materially impairing its value, and in the absence of proof to the contrary, a finding by the trial court to this effect will not be disturbed on appeal.

2. Lands—Recovery—Infants—Remaindermen—Life Tenant— Guardian and Ward—Timber Cut and Removed.—In an action by two plaintiffs to recover a one-fifth interest each in a tract of land, it is error to charge two infant defendants, to whom a remainder interest in the land had been conveyed, subject to an estate for life in their mother, with the value of timber cut and removed pursuant to a contract made with their mother, the life tenant, or with timber cut and disposed of by their guardian, as no lia-

bility may be imposed upon infants by the unauthorized acts of others.

3. Lands—Recovery—Infants—Rents.—Where two plaintiffs recover of infant remaindermen a one-fifth interest each in a tract of land, the infants should not be charged with two-fifths of the rental value of the land, except from the time they acquired possession on the death of the life tenant.

J. S. CLINE for appellants.

P. B. STRATTON for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Richard Syck, a resident of Pike County, Kentucky, died in the year 1891. He left surviving him Sallie A. Syck, his widow, and five children, namely: Oscar Syck, Polly Williams, Richard Syck, Jr., W. B. Syck and Orpha Ratliff. At the time of his death, he owned a tract of land on Cloe Creek, supposed to contain about 223 acres. On December 4, 1897, decedent's widow and children conveyed the aforesaid tract of land to R. A. Hellier. At the time of the conveyance, Oscar Syck was an infant, and Polly Williams was a married woman, whose husband did not unite with her in the deed and had not theretofore made conveyance of the property to the grantee. On January 26, 1901, R. A. Hellier and wife conveyed the surface of the land to Anna L. Huffman for life, with remainder to her bodily heirs. Thereafter, Anna L. Huffman died, leaving surviving her two children, Elinor Hatcher and Joe Huffman, both infants. R. A. Hellier died in the year 1907, intestate, and left surviving him his widow, Lyda E. Hellier, and two infant sons, Charles E. Hellier and James Earl Hellier. On August 19, 1902, the Big Sandy Company purchased the coal and mineral rights in the land in controversy.

This action was brought by Oscar Syck and Polly Williams to recover a one-fifth interest each in the land in controversy, on the ground that the deed which they executed in the year 1897 was invalid as to them. The trial court gave judgment against them. On appeal to this court, the judgment was reversed and the cause remanded, with directions to enter judgment in favor of plaintiff. Syck v. Hellier, 140 Ky., 393. In remanding the cause, the court said:

"If the land is susceptible of division without materially impairing its value, it should be divided and the

respective interests of the appellants set off to them; otherwise, the whole tract will be sold. Appellees, according to their respective interests, will be given a lien on the interest of appellants to secure their portions of the original purchase price, with interest thereon from the date of payment. Appellees will also be given credit for such taxes as they may have paid, with interest thereon from the time of each payment. As the value of the land has not been enhanced by any improvements, the foregoing will be the only credits to which appellees are entitled. Appellants will be permitted to set off against the foregoing their respective shares of the reasonal rental value of the tract of land in controversy, and the market value of any timber which appellees may have removed from the land. Upon all these questions the court may hear additional proof.''

On the return of the case no additional proof was taken, but the court, upon the facts before him, adjudged that the land was susceptible of division. Thereafter, he appointed three commissioners to divide the land, one of them being the county surveyor. One of the commissioners failed to act, but the other two qualified and filed their report. Exceptions to the report were filed and overruled.

The case being referred to the Master Commissioner, he found that R. A. Hellier paid to Sarah A. Syck the sum of $446 on December 4, 1897. As this money was used by her in discharging her husband's debts, and plaintiffs below received the benefits thereof to the extent of their respective interests, they were charged in the Commissioner's report with two-fifths of said sum, with interest from the time of payment. They were also charged with two-fifths of the amount of taxes paid, with interest thereon from the time of each payment, the whole amount aggregating $141.06. The defendants below were charged with timber to the amount of $525, for two-fifths of which plaintiffs were given credit. The Commissioner also fixed the rental value of the land at $25 for a period of twelve years, making a total of $300, and charged the defendants with two-fifths of this sum. To this report exceptions were filed by both plaintiffs and defendants. Upon submission of the case on the exceptions, the court fixed the value of the timber taken at $375, and allowed the plaintiffs credit for this sum as of Deember 2, 1904.

He also fixed the rental value of the land at $25 for a period of thirteen years. After crediting defendants with $446 with interest, and the amount of taxes and interest, and charging them with the value of the timber taken and the rental value of the land, he found a balance in defendant's favor of $174.71, and that of this sum each of the plaintiffs owed the sum of $34.94, which he directed to be paid to the defendants. From that judgment this appeal is prosecuted.

The court did not err in adjudging, without further proof, that the land was susceptible of division. Plaintiffs were to have one-fifth each of the land in controversy, while the two defendants were entitled to the remaining three-fifths. There being about 183 acres of land, the presumption is that it could be divided without materially impairing its value. Had the defendants desired to show the contrary, they should have introduced proof on the question. In the absence of such proof, the judgment of the trial court will not be disturbed. The fact that one of the commissioners appointed by the court to make the division was a witness for plaintiffs as to the rental value of the land, did not disqualify him from acting as commissioner. While exceptions were filed on the ground that the land was not divided according to quality and quantity, no proof was introduced tending to show that the division was unfair. Furthermore, plaintiffs, through their attorney, offered in open court to take their shares out of the three-fifths allotted to the defendants, and to turn over to the defendants the two-fifths allotted to them. Upon the defendants declining to do this, and there being no proof of any inequality in the partition, the court properly overruled the exceptions.

It appears from the record that about 120 trees were cut and removed from the land by James Williams, husband of Polly Williams, and Sam Huffman, the husband of Anna L. Huffman. There is some evidence to the effect that this was done pursuant to a contract made with Anna L. Huffman, the life tenant. At the time this was done, Elinor Hatcher and Joe Huffman were both under ten years of age. It matters not whether this timber was removed with or without the authority of Anna L. Huffman; under no circumstances could the infant defendants, Elinor Hatcher and Joe Huffman, be charged with the value of the timber. The life tenant

had no authority to sell the timber, and thus impose a burden upon her infant children. On the other hand, her husband had no authority to cut or dispose of the timber. That being true, the infant defendants can not be made liable for the unauthorized acts of others. For the same reason, they should not be charged with the value of the timber cut and removed by the authority of their guardian. It was standing timber, and constituted a portion of the realty. Being realty, the guardian had no right to dispose of it, and having no right to dispose of it, he could not impose upon the wards any liability growing out of his unauthorized acts. In our former opinion, we directed that appellees should be charged with the value of the timber which they removed from the land. The record fails to show that any timber was removed from the land by them; on the contrary, all the timber was removed by others, for whose acts they are in no way responsible. It follows that the court erred in charging them anything on account of timber cut and removed.

We see no reason for disturbing the rental value of the land in controversy, as fixed by both the commissioner and the circuit judge. In the judgment, the infant defendants are charged with the rental value of the land for a period of thirteen years, or from the time when conveyance was first made to a R. A. Hellier. The infants should not be charged with rent during the time that R. A. Hellier had possession of the premises, or during the time that their mother, Anna L. Huffman, the life tenant, had possession of the premises. They should be charged with rents only from the time that they became possessed of the property; that is, from the date of their mother's death. Upon the return of the case, this date may be fixed by agreement, or, in the absence of an agreement, the court may hear proof thereon.

Judgment reversed, and cause remanded, with directions to enter judgment in conformity with this opinion.