THE CANFIELD RUBBER COMPANY *vs.* DANIEL J.
LEARY ET ALS.

Third Judicial District, New Haven, January Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

An excavator of the soil is not bound to furnish lateral support to his
neighbor's building as distinguished from his neighbor's land in
its natural state; but this immunity does not exonerate him from
the obligation to use reasonable care in carrying on his work of
excavation, and if his neighbor's building is injured as the result
of the excavator's negligence, he is responsible therefor in damages.
This rule accords with the common duty involved in the exercise
of one's property-rights, which finds its expression in the maxim
*sic utere tuo ut alienum non lædas.*
Under such circumstances negligence is not limited to acts of trespass
upon the adjoining property, but may be shown by a failure to use
reasonable care to find out in advance as the work progresses
whether it is likely to cause damage to his neighbor's building,
and if so, to seasonably notify him in order that he may have an
opportunity to protect his building against damage which cannot
wholly be averted even by the exercise of reasonable care in the
performance of the work.
Notice to the adjoining landowner will not free the excavator from the
duty of taking reasonable care to avoid inflicting unnecessary
harm in making the excavation; but such care will ordinarily re-
quire no more than the adoption of commonly-used and approved
methods of preventing the adjoining soil, burdened with build-
ings, from moving into or toward the excavation.
The evidence in the present case reviewed and *held* to warrant a verdict
finding the defendants negligent in making the excavation in ques-
tion.
The usual rule of compensation for wrongful injury to property is the
resulting depreciation in its value.
Special interrogatories must be so framed that in each case the answer,
whether affirmative or negative, will be conclusive as to some im-
portant issue of fact; otherwise the court may properly refuse to
submit them to the jury, as defective in form.

Argued January 16th—decided June 1st, 1923.

ACTION to recover damages for injuries to the plain-
tiff's building and its contents, alleged to have been

Canfield Rubber Co. *v.* Leary.

caused by the negligent failure of the defendants to provide proper and necessary lateral support while constructing a highway sewer in front of the plaintiff's premises, brought to the Superior Court in Fairfield County and tried to the jury before *Banks, J.;* verdict and judgment for the plaintiff for $10,500, and appeal by the defendants. *No error.*

The complaint alleges a cause of action based on the negligence of the defendant contractors in excavating, maintaining and filling in a sewer ditch in front of the plaintiff's factory building, whereby the lateral support of the plaintiff's soil was removed and its building damaged. The defendants answered alleging that the injuries, if any, were due to the improper construction of the plaintiff's building, or to improper specifications provided by the City of Bridgeport for the construction of the sewer, and denying negligence. The City of Bridgeport was cited in, as a defendant, but on motion for a separation of issues for trial, this action against the contractors was ordered to be first tried.

On the trial the plaintiff claimed to have proved the following facts: that its building was in good condition and free from structural defects; that the defendants, under a contract with the City of Bridgeport, constructed a sewer in Railroad Avenue in front of the plaintiff's factory building, about eleven feet in width and twenty-two feet deep, some five feet distant from the front wall thereof; that the sides of the trench were supported by sheeting, but the sheeting was so constructed, and the soil of such a character, that fine sand flowed into the trench and under and through the sheeting; that in order to keep the trench free from water, the defendants operated a pump whose suction end was below the level for laying pipe, and drew up large quantities of such sand; that the

defendants negligently failed to block off an old sewer so as to prevent it from discharging surface water into the trench, and that as the result of these and other acts of the defendants the soil under the foundations of the plaintiff's building was removed and the building settled and was injured. The specific negligent acts which the plaintiff offered evidence to prove, include the following: that the defendants knew, or should have known, that the construction of the sewer by the means intended to be used by them would endanger the plaintiff's building, but gave no notice or warning of such danger to the plaintiff; that reasonable care in the performance of the work required other and more efficient protection of the sides and bottom of the trench than was used by the defendants, and required the defendants to use a method of pumping which would not remove large quantities of sand in the bottom of the ditch, and required that the defendants should not have kept open at any time more than twenty-five feet of trench excavated to the depth in front of the plaintiff's building, while in fact they kept open about fifty feet of trench excavated to depth. The plaintiff also claimed to have proved that the settlement of the soil under the foundations of its building was not due to the weight of the building, but was due to the defendants' failure to support the plaintiff's soil in its natural state without the weight of the plaintiff's building upon it.

The defendants claimed to have proved that the construction of the sewer and the excavation of the trench, in all respects identical in depth and other dimensions with that in front of plaintiff's building, was commenced at a considerable distance from the plaintiff's premises and gradually approached them as the work progressed; that the plaintiff's officers had actual notice of the character of the work and of

the methods employed by the defendants in ample time to have protected their building, but failed to do so; that the defendants performed the work with due care and in such a manner as to support the plaintiff's land in its natural state, and that the plaintiff's building settled and was damaged by its own weight, or before the defendants excavated in front of it.

The jury returned a verdict for the plaintiff, and answered the following special interrogatory: "Was the sheeting and timbering of the defendants' trench at all times sufficient to support the plaintiff's soil in its natural state without the weight of plaintiff's building upon it?" Answer: "No."

A motion to set aside the verdict as against the evidence was denied. Defendants appeal from the refusal of the court to set aside the verdict, and assign errors in the charge of the court and in its rulings on evidence.

*Carl Foster* and *Sanford Stoddard,* for the appellants (defendants).

*William H. Comley* and *John M. Comley,* for the appellee (plaintiff).

BEACH, J. Taking, first, the ruling on the motion to set aside the verdict as against the evidence. It is not denied that there was legally sufficient evidence of one or more of the specifications of negligence alleged in the complaint. The motion was based, as appears from the memorandum of decision on the motion and from the appellants' brief, on two claims of law, which also underlie other assignments of error, as to the legal duty of the defendants in conducting excavations in the highway, and as to the legal duty of the plaintiff to protect its own buildings, after having had

timely notice—actual or imputed—of the character of the excavation and the manner of conducting the work.

These claims are stated substantially as follows: (a) that because no burden rested on the defendants to maintain the plaintiff's buildings upon the plaintiff's land, they could not be held for injury to them unless they were guilty of negligence directly injuring the plaintiff's buildings, as by hammering, pulling, pushing, blasting or the like; (b) that it was the plaintiff's duty to protect its own buildings, and if, having timely notice of probable danger of injury from the withdrawal of lateral support by the proposed excavation, it failed to protect the same, it was guilty of contributory negligence.

As to the facts, the defendants' claim is that there was no evidence of any acts by them directly injuring the plaintiff's building, and that there was undisputed evidence of timely notice and of the plaintiff's failure to take any steps to protect its building.

The authorities do not support the defendants' claims of law above stated. Referring, first, to our own decisions: *Trowbridge* v. *True,* 52 Conn. 190, deals only with the settled rule that the owner of land has a right to the lateral support of his own soil in its natural state, and holds that to that extent the right to lateral support is an incident of the ownership of land. It also holds that the obligation of the adjoining owner to furnish that measure of lateral support, is satisfied by providing adequate artificial support in place of the soil removed. *Ceffarelli* v. *Landino,* 82 Conn. 126, 72 Atl. 564, lays down the equally familiar rule that at common law this right to lateral support does not extend to buildings, saying: "But if there are buildings upon the neighbor's land, and these increase the lateral pressure, and if the giving way is due to this added burden, the person excavating

is not liable, in the absence of negligence in conducting the work, for the damage so resulting to the owner." In *Barnes* v. *Waterbury*, 82 Conn. 518, 74 Atl. 902, a retaining wall was undermined in the construction of a sewer alongside of the plaintiff's lot, and, as the plaintiff alleged and claimed, by the negligence of the City of Waterbury in executing the work. The jury found for the defendant, but in discussing the charge of the court we quoted the above excerpt from *Ceffarelli* v. *Landino*, and added: "In the present case the natural right of support existed in respect of the lands only and not of the retaining wall thereon. The parties, however, making an excavation in the passway were bound to use reasonable care in the prosecution of the work, and would be liable for injury to the plaintiff's property resulting from negligence." In *Huber* v. *Douglas, Inc.*, 94 Conn. 167, 108 Atl. 727, there was a verdict against contractors for damages for the collapse of plaintiff's building, alleged to have been caused by the defendants' negligence in carrying out the work of demolishing an adjoining building and excavating for the foundation of a new one. The court charged the jury in accordance with the rule last quoted from *Barnes* v. *Waterbury*. We held the charge correct, and said of the defendants' criticism of that rule: "In the stress which the defendant lays upon its own claimed immunity under a too narrow interpretation of the law of lateral support, it seems to practically overlook the equally important correlative rule which still holds one in its position to the strict exercise of reasonable care. This ' is not based upon any right of property in adjacent land for support of buildings or otherwise. It is simply a restraint upon reckless and unnecessary conduct in respect to the use of such adjacent property, fraught with danger to the building. Its justification is found in

a well-established principle, having wide application in English and American jurisprudence, and its application to cases of this kind is as well settled as the doctrine that the owner of a building has no right of support therefor in the land of an adjacent owner. The two propositions are asserted, side by side, in the same decisions, and in practically all of them.' *Walker* v. *Strosnider*, 67 W. Va. 39, 46, 67 S. E. 1087."

The excerpts in the last three cases were deliberate rulings in each case upon the charge of the court, and they are supported by the overwhelming weight of authority. See the note to *Hannicker* v. *Lepper*, 6 L. R. A. (N. S.) 243 (20 S. D. 371, 107 N. W. 202), where the rule we have adopted is said to accord with the unanimous opinion of the authorities, and numerous cases are cited; also the still larger collection of authorities cited in note 92 to 1 Corpus Juris, 1221, to the point that "if, in excavating, a landowner, or others under his . . . control, fail to prosecute the work skillfully or to take proper care to avoid injury to the structures on adjoining land, and damage is sustained by the adjoining landowner, the excavator will be liable for all damages resulting, both to the land and buildings, from his negligence or wrongful conduct "; also the note to *Voeckler* v. *Stroehmann's Vienna Bakery*, Anno. Cas. 1917A, 353 (75 W. Va. 384, 83 S. E. 1025). Some of the later cases there cited are: *Vandegrift* v. *Boward*, 129 Md. 140, 98 Atl. 528; *Cooper* v. *Altoona Concrete Const. & Sup. Co.*, 231 Pa. St. 557, 562, 80 Atl. 1047; *Noceto* v. *Weill*, 166 Ill. App. 162; *Bissell* v. *Ford*, 176 Mich. 64, 141 N. W. 860; *Weiss* v. *Kohlhagen*, 58 Or. 144, 151, 113 Pac. 46; *Home Brewing Co.* v. *Thomas Colliery Co.*, 274 Pa. St. 56, 117 Atl. 542; *Jones* v. *Hacker*, 104 Kan. 187, 178 Pac. 424; *Williamson Inv. Co.* v. *Williamson*,

96 Wash. 529, 165 Pac. 385; *Horowitz* v. *Blay*, 193 Mich. 493, 160 N. W. 438.

The defendants' contention as to these cases is that they are all inconsistent with the undoubted rule that the right of lateral support does not extend to buildings, unless the negligence referred to is understood to be limited to some act directly injuring the adjoining buildings; that is to say, to acts of trespass inflicting injury. The answer to that contention is found in the quoted excerpt from our opinion in *Huber* v. *Douglas, Inc., supra*, which points out the *non sequitur*. Because the defendants, acting under the authority of the City of Bridgeport, had the right to withdraw lateral support from the plaintiff's building, provided they did not cause the plaintiff's soil to settle of its own weight, it does not follow that they had a right to do so without taking reasonable care to avoid inflicting unnecessary harm. The maxim *sic utere tuo ut alienum non lædas* expresses the common duty of taking care in the exercise of one's property rights. The right to withdraw lateral support from the plaintiff's buildings is not, as defendants contend, extinguished by the duty of taking reasonable care in exercising it. If the injury to the plaintiff's building had been unavoidable, the City of Bridgeport and its contractors might, after notice, have proceeded with the work and injured the plaintiff's building without liability. But if the injury were avoidable by the exercise of reasonable care, they must exercise their undoubted right to construct a sewer in the highway on the same terms, as against the lawful rights of others, that they, and all responsible persons, are required to exercise all other rights. In *Charless* v. *Rankin*, 22 Mo. 566, 572, the court, after referring to the rule that no man has a right to require his neighbor to maintain or furnish lateral support for buildings, said: "Every

person, however, who is performing an act is bound to take some care in what he is doing. He cannot exercise his own indisputable right without observing proper precaution not to cause others more damage than can be deemed fairly incident to such exercise."

The defendants rely strongly on *Thurston* v. *Hancock*, 12 Mass. 220. That was an action on the case for wrongfully undermining the soil of the plaintiff and causing it to fall away from the foundations of the plaintiff's house, and damages were awarded for the falling of the plaintiff's soil into the pit so dug, but not for the resulting injury to the house. The action was based solely on the trespass, and not at all on negligence. And this distinction is pointed out in the later Massachusetts cases. In *Foley* v. *Wyeth*, 84 Mass. (2 Allen) 131, the action was against an adjoining owner for damages for causing a passway to cave in. It was held that for the damage to the passway, the plaintiff might mantain his action without proof of negligence; but the court adds, in approving the charge of the court (p. 133): "For an injury to buildings, which is unavoidably incident to the depression or slide of the soil on which they stand, caused by the excavation of a pit on adjoining land, an action can only be maintained when a want of due care or skill, or positive negligence, has contributed to produce it." In *Gilmore* v. *Driscoll*, 122 Mass. 199, the distinction thus taken between the right of action based on wrongful invasion of property rights, and that based on negligent exercise of a lawful right, is summed up as follows: "It has generally been considered that for an excavation causing an injury to the soil in its natural state an action would lie; but that, without proof of a right by grant or prescription in the plaintiff, or of actual negligence on the part of the defendant, no action would lie for an injury to buildings by excavating adjoining land not previously built

on." p. 207.   This, again, was a case in which no negligence was alleged and proven; but only that, in consequence of the excavation, the plaintiff's right to have his soil stand was invaded.   *Cabot* v. *Kingman,* 166 Mass. 403, 44 N. E. 344, was a case that in some respects resembles the case at bar.   Pumps used to keep a sewer trench free from water sucked out the adjoining subsoil to such an extent as to cause the surface of the plaintiff's land to crack and settle.   There was no building affected, and the only question was whether the case fell under the rule as to the withdrawal of subterranean waters, or under the rule as to the withdrawal of lateral support, and a majority of the court took the latter view.

It may be well to point out distinctly that the rule which the cases lay down does not make the excavator, an adjoining landowner, an insurer of his neighbor's buildings.   It goes no further than to require him to exercise a reasonable degree of skill and care to avoid injuring them; and it seems that such a rule is necessary in order to secure to every landowner the fullest possible enjoyment of his rights to improve his own property. Courts, and in some jurisdictions legislators, have recognized that as land becomes valuable for building purposes, the common-law rule of property denying any right of lateral support to buildings cannot be carried to the point of licensing the adjoining owner to excavate regardless of the consequences to his neighbor's buildings, without, in effect, depriving the latter of his property right of building up to the dividing line, or, as in this case, up to the highway line.   It is no longer possible under modern urban conditions to say that an owner who builds to the line does so at his peril; and, on the other hand, it is not possible to say that his neighbor shall not thereafter excavate near the adjoining buildings except at his peril.   Between equal and

conflicting property rights a compromise has been effected by the rule in question, and in applying it its purpose should be kept in view; to wit, to secure to each of the adjoining owners in equal measure the fullest possible enjoyment of his property rights.

The duty of furnishing or maintaining lateral support to the adjoining soil in its natural state is an absolute one, and arises out of ownership, or permanent or temporary control, of adjoining land, and this duty may introduce a complicating factor into the situation, even though the land is built upon. Laying aside that possibility, the qualified duty of temporarily maintaining or furnishing lateral support to soil burdened with buildings, does not impose a servitude on the land or limit the owner's right to improve it at will. It does require him, in carrying out his improvements, to use reasonable care and skill, and to that extent it is a limitation on the manner in which he may perform the work of improving his land. It is of course impossible to define in advance what will constitute reasonable care in a given case; but the authorities seem to justify the following general observations. The excavating owner is required in the first place to use reasonable care to find out in advance, or as the work progresses, whether it is liable to cause damage to his neighbor's building; and if so, to notify the owner in time to give him an opportunity to protect the building against damages which cannot be wholly averted by the exercise of reasonable care in the performance of the work. Reasonable care in the performance of the work will generally require no more than the adoption of commonly used and approved methods of preventing the adjoining soil burdened with buildings from moving into or toward the excavation. After due notice the owner of the building must protect himself against risks caused by its additional weight

upon the soil, which cannot be averted by such methods.

The defendants' second claim of law, namely, that the plaintiff having timely notice of the character of the work and the methods employed in conducting it, was bound at its peril to protect its own building, is, when thus stated without qualification, a corollary of the defendants' first claim of absolute nonliability, after notice, for failure to support the plaintiff's building. But when it is shown that the defendants' claim of absolute nonliability to support the building is qualified by the duty of taking reasonable care to avoid inflicting unnecessary harm, it follows that the defendants' correlative assumption as to the plaintiff's absolute duty to protect its building is subject to a corresponding qualification. Otherwise the defendants might rid themselves of the duty of excavating carefully, by merely giving notice that they were going to excavate.

"It is apparent that by giving the notice, a person excavating cannot relieve himself of any portion of the prudent care with which he must have conducted the work in the absence of the statutory provision requiring notice." *Aston* v. *Nolan*, 63 Cal. 269, 273. Quoted with approval in *Conboy* v. *Dickinson*, 92 Cal. 600, 604, 28 Pac. 809. "The decisions which place this duty of shoring or bracing upon the owner are not to be interpreted as relieving the excavator from the adoption of any means for the protection of the building." *Walker* v. *Strosnider*, 67 W. Va. 39, 51, 67 S. E. 1087. The measure of the owner's obligation to protect his own buildings against injury from excavations in adjoining land is accurately stated in *Hanrahan* v. *Baltimore City*, 114 Md. 517, 80 Atl. 312. That was a sewer construction case very like the present, and the defendant made the same claim there as here,

that the plaintiff, after notice, was bound to protect her own building; as to this claim the court said (p. 533): "It was argued in behalf of the city . . . upon the authority of *Shafer* v. *Wilson*, 44 Md. 281, that it was the duty of Mrs. Hanrahan to shore or prop her house so as to make it secure in the meantime. But we think it is obvious that this is required not to guard against negligence of the other party in making the excavation, but to protect himself against an inevitable injury which might otherwise result from the most careful performance of the work."

This, we think, expresses the just and necessary result of the joint operation of the two rules involved. It leaves the excavating landowner, so long as he does not cause his neighbor's soil to settle of its own weight, free to use his own land for any lawful purpose, subject only to the common duty of taking reasonable care to avoid inflicting unnecessary harm; and it requires the owner of adjoining buildings to protect them only to the extent that he may not reasonably expect the excavator to do so.

The trial court charged the jury with precision as to the relative rights and duties of the parties, saying, throughout the charge, that the defendants would be liable "only in case it appeared that they were negligent in the conduct of the work," and that the duty of the plaintiff was "to take all necessary measures to protect its building from the probable consequences of the excavation when done in an ordinarily careful manner, but it was not bound to guard against damage from the negligent acts of the defendants in the conduct of the work, of which it had no knowledge." Under these instructions the jury has found the defendants negligent and the plaintiff not negligent. It is said that the latter finding is inconsistent with

the proof that the plaintiff's general manager knew of the character of the excavation, its proposed location in the highway, and saw the methods employed by the defendants in carrying out the work. But it does not follow that he was bound to anticipate danger unavoidable by the exercise of reasonable care. Apparently none of the experienced contractors and engineers who testified, regarded the work as inherently dangerous to the plaintiff's building. Besides, the record shows that there was evidence from which the jury found as a fact that the work could have been performed without injury to the plaintiff's building, had the defendants used reasonable care in conducting it. Under these conditions it cannot be said that the plaintiff was negligent as matter of law in not taking steps to protect its building. The condition here is quite different from that in *Huber* v. *Douglas, Inc.*, where the undoubted fact of critical danger was made known to the plaintiff, and it was said that he would have been required to take steps to protect his building had not the contractor undertaken to protect it for him. Even in such a case, if the danger were irreparable and due entirely to the contractor's previous negligence, he could not shift the responsibility for the consequences upon the owner of the building.

In this case the jury might reasonably have found that the danger to the building was not apparent to the plaintiff until it began to settle and crack, and that it was then too late for the plaintiff to take effective steps to protect it.

The foregoing discussion of the law covers all the assignments of error in the charge of the court except one which challenges the correctness of the measure of damages adopted, i. e.: "the resulting depreciation in the value of the property." This is the usual

rule of compensation for wrongful injury to property, and we see no reason why it should not be applied in this case.

The defendants assigned as error the refusal of the trial court to submit to the jury certain special interrogatories which they offered for that purpose. The number and form of such interrogatories rest largely in the discretion of the court. *Freedman* v. *New York, N. H. & H. R. Co.*, 81 Conn. 601, 611–615, 71 Atl. 901. In some cases they may be necessary in order to prevent possible injustice. *Aaronson* v. *New Haven,* 94 Conn. 690, 697, 110 Atl. 872. But in this case we do not think the interrogatories asked for were necessary or proper in form. The object is to ascertain upon what ground the general verdict rests; and in this case, on the defendants' theory of the law, the important question was whether the settlement of the plaintiff's soil was caused in part by the weight of the plaintiff's building upon it. That question was not directly asked. The first and seventh interrogatories (the latter being submitted to and answered by the jury) appear to have been drawn so that an affirmative answer would serve the defendants' purpose, but a negative answer would still leave open the important question as to whether the movement of the plaintiff's soil was in fact aided by the weight of the building. The third interrogatory, "Did the plaintiff do anything to protect its building," was proper enough in form but unnecessary, because there was no evidence that it did. The fourth, fifth and sixth interrogatories were, in form, questions of law, asking,—"Are the defendants liable"—because of facts or omissions stated. We make these comments to call attention to the necessity of so framing special interrogatories that the answer, whether affirmative or negative, will be conclusive as to some important issue of fact.

Otherwise the court may very properly refuse to submit them to the jury.

The remaining eighteen assignments of error relate to rulings on evidence. We have examined them *seriatim;* they deal for the most part with such questions as the order of proof, the materiality of collateral facts, the sufficiency of the identification of exhibits, the limits of cross-examination, and the admissibility of leading questions. The admission of evidence as to overhead charges was harmless, because no claim was based on it, and none could be under the charge of the court. The same is true as to the testimony of the original cost of the building; besides, its original cost was one element in a familiar method of ascertaining present value. We find no error in the rulings on evidence.

There is no error.

In this opinion the other judges concurred.