[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In his two count first amended complaint the plaintiff landowner, Paul Powers, seeks treble damages under General Statutes § 52-560 for injuries to two large trees caused by defendants excavating their supporting slope and seeks to enjoin defendant, Edward Olson, Jr., from making any further excavation on or adjacent to plaintiff's land which would weaken the lateral support for the trees. Plaintiff's second count alleges a violation of CUTPA by reason of defendants excavations. Trial was held before this court on March 19 and 26, 1998, with briefs being filed through April 28, 1998. Early in the trial, plaintiff moved, without objection, to amend his complaint by removing his claims for compensatory and treble damages under his first count, and by adding to his claim for injunctive relief that defendant be required to provide lateral support for the trees. This amendment was filed in court under date of March 31, 1998.
 — I —
The material facts are not disputed. On October 10, 1990, plaintiff, Paul Powers, signed a sales agreement with Mark Olson to purchase Lot No. 7 on Burtonwood Estates development, also known as 150 Cobey Road, Rocky Hill, together with a dwelling CT Page 9443 house being constructed on said lot by Mark Olson. At that time, the lot was actually owned by defendant Edward Olson, Jr., the developer of Burtonwood Estates subdivision and the father of Mark Olson. The Sales Agreement contained the following language:
 15. SLOPE RIGHTS. Seller reserves the right to grade and slope said premises and relocate property line in connection with the reconstruction and relocation of Cobey Road, provided, however, said Lot #7 shall conform to the zoning regulations of the Town of Rocky Hill.
Prior to the scheduled closing for the lot and dwelling house, the attorney for the plaintiff notified the defendant, Edward Olson, who was also a practicing attorney and who was preparing the sellers documents that plaintiff would not accept any deed of conveyance containing a reservation of slope rights similar to that in the sales agreement. On January 25, 1991, the closing took place, with two warranty deeds of conveyance, one from the defendant to Mark Olson, and the second from Mark Olson to plaintiff, neither deed containing a reservation of slope right. Each deed describes Lot No. 7 by appropriate bounding distances and being on a map:
 or plan entitled: "Subdivision Plan: Burtonwood Estates Property of Jean W. Olson Cobey Road New Britain Avenue Rocky Hill, Connecticut John Lawrence Assoc. Engineers-Surveyors 486 Prospect Ave. Hartford, CT 06105 Phone 232-4740 Scale 1"=40' Date August, 1988 Drawn By J.D.P. Checked By J.J.L. Drawing No. 1 Revision No. 1 10-26 Staff Comments J.R. No. 2 01-06-89 Lots 5, 7, 8 No. 3 04-18-89 San. Esmt Data, House #s" which map or plan is on file in the Rocky Hill Town Clerk's Office. . . .
Each deed contained, in addition to the usual warranty deed provisions, the following language:
 Said premises are conveyed subject to any ordinance municipal regulations, public or private law . . . and to a sewer easement to the Metropolitan District as shown on said map.
The subdivision plan of Burtonwood Estates, described above, consisting of six pages stapled together each approved by the Town of Rocky Hill Planning and Zoning Commission and recorded in the land records of Rocky Hill on pages 1900A thru 1900F on July 10, 1989, was admitted as a full exhibit. From the first page of the map and the description on the warranty deeds, it appears CT Page 9444 that Lot No. 7 is bounded westerly by the curved line of Cobey Road for a distance of 169.12 feet. The northwest corner of the lot contains a stand of trees including two large sugar maple trees on a sharply sloping bluff some six to eight feet above the present road level of Cobey Road. At the time of the closing, the roadway had not been relocated nor sidewalks installed. In April 1996, a contractor hired by the defendant excavated portions of Cobey Road near the northwest corner of Lot No. 7 in preparation for the indicated relocation of Cobey Road and the installation of a sewer catch basin and the future installation of sidewalks. The proposed relocation of the road would eliminate a small triangle of the Old Cobey Road from Lot No. 7 and conforms to the description in the two warranty deeds.
Plaintiff claims that defendant had no right to make such excavation because in doing so he trespassed on defendant's property and destroyed the lateral support for the two large maple trees, damaging their roots and causing irreparable damage. Indeed photographs show an almost vertical, exposed embankment with small roots from the trees showing, located just above a new sewer catch basin and in line with a large tree.
On November 26, 1996, plaintiff obtained a temporary injunction from this court preventing defendant from entering or excavating any part of plaintiff's property and permitting plaintiff to take measures to preserve the trees and to prevent erosion of the bank "so long as such activity does not affect Cobey Road or any catch basins installed by the defendant."
 — II —
Plaintiff bases his claim on his chain of warranty deeds from the Olsons and the lack of any right or easement in the defendant to make such excavation. He also claims that his right to lateral support has been interrupted.
Defendant justifies his excavation as a reasonable exercise as a developer of his responsibility to the town to relocate Cobey Road and install required catch basins and that he has done so in a manner that would least interfere with plaintiff's property rights.
 — III —
At trial the introduction into evidence of the six pages of the subdivision plan for Burtonwood Estates was opposed by CT Page 9445 plaintiff who claimed that only the first page of the plan, showing the layout and dimensions of the lots was admissible. Robert Moran, an attorney with a real estate practice called by plaintiff, testified that he would not ordinarily examine more than the first page of the plan when searching a title, and that examination of other pages in the plan was not required even if they were all recorded in the land records. General Statutes § 7-31 provides for the recording of maps meeting certain conditions in the land records, which show projected highways approved by municipal authorities and that such maps "be deemed a part of the deeds referring thereto." The general rule in Connecticut has long been that a landowner is charged with constructive knowledge of any matter affecting his title which appears in the conveyances in his claim of title. Hawley v.McCabe, 117 Conn. 558, 562 (1933); Conn. Standards of Title
(1980) standard 2.3 Comment 1. The reference to the recorded map in plaintiff's deed would seem to have charged plaintiff with notice of the requirements on all the recorded sheets of the approved plan.
Sheet 1 of the plan shows the proposed relocation of Cobey Road directly affecting a portion of Lot No. 7.
Sheet 2 is a contour map showing the steep rise in elevations on the west side of Lot No. 7 and contains among its General Notes.
"6. Disturb only those areas necessary for construction. Remove only those trees, shrubs or grasses as required."
"16. Maximum regrading slope — 1 vert/2 horiz."
Sheet 3 shows the location of a sewer catch basin adjacent to the westerly line of Lot No. 7, as well as a 20' sanitary sewer easement straddling the northeasterly line of Lot No. 7, running to Cobey Road.
Sheet 6 contains 61 conditions to be met by the developer and the following reference "14. Declaration of Easements and restrictions for berms, slope rights, flooding."
Plaintiff has not seriously challenged the authority of the town Plan Zoning Commission to require all of the above conditions to be carried out by the developer, nor the legal responsibility of the developer to comply with them. This power is specifically authorized by General Statutes § 8-25 and the specific power of the commission to prescribe the extent to which CT Page 9446 and the manner in which streets shall be graded and improved has been recognized in Moscowitz v. Planning Zoning Commission,16 Conn. App. 303, 311 n. 7 (1988).
Moreover, the provisions laid out in such a subdivision map are binding not only on the developer but all purchasers of lots in the subdivision. Yokley, Law of Subdivisions, Michie, 2nd Ed. (1981) § 26, 27, 50; Richard M. Yarwood, Land SubdivisionRegulation, Praeger Special Studies pp. 99, 100. See: Annotation in 86 ALR 2d 872-875 "Dedication, — Revocation by Successors." It is clear that when the subdivision plan was approved the entire tract was owned by the developer, so that no consents by third parties or prospective lot purchasers were necessary for the town to impose these conditions.
It is concluded that as between the town and the developer, adequate provisions were made for slope rights in the plans and that the recorded plans gave constructive notice of such slope rights to the plaintiff. In addition, and perhaps more significantly, plaintiff had actual notice of such slope rights affecting his lot because of the specific language in the Sales Agreement which he signed. See Kulmacz v. Milas, 108 conn. 538 (1928).
 — IV —
It is fundamental law that the owner of any land is entitled to have that land supported in its natural condition. Powell, Law of Real Property, Michie (1998) § 698. One who withdraws such lateral support without good cause will be liable in damages and may be required to restore the same or equivalent support, id., § 701[3]; Canfield Rubber Co. v. Leary, 99 Conn. 40
(1923).
The uncontradicted testimony of defendant at trial was that he reluctantly removed the slopes right reservation from the deeds of conveyance at plaintiff's insistence because he could not afford to lose or postpone the sale of the premises to plaintiff. The reservation of slope rights by the defendant would have protected him against any claim of damage to the trees or land of the plaintiff provided defendant performed his excavations in a reasonably prudent manner. Intentional withdrawal of such reservation by omitting it from the deeds or other closing documents does not affect the right of the town or owners of lots on the subdivision with respect to the provisions CT Page 9447 set forth on the map. However, defendant's excavation following such withdrawal is a breach of an implied or quasi-contract between the plaintiff and defendant and subjects the defendant to liability for damages sustained by plaintiff to his trees or property. Bershtein. et al. v. Nemeth, 221 Conn. 236, 241
(1992); Doe v. Cuomo, 43 Conn. Sup. 222, 236 (1994).
 — V —
But plaintiff has amended his complaint and orally withdrawn any claim to compensatory and treble damages sustained by him, and indeed there has been no evidence of what monetary damage he has sustained. His second count seeking attorneys fees and punative damages under CUTPA fails, because under all the circumstances defendant's actions in authorizing the excavations, were taken under a color of right in his role and responsibility as tract developer and cannot be considered to have offended public policy, to have been offensive or unscrupulous or to have caused substantial injury to consumers. McLaughlin Ford Inc. v.Ford Motor Co., 192 Conn. 558, 567 (1984).
 — VI —
Plaintiff seeks to prevent defendant from further excavating on his property or from further removing any lateral support for his trees. The testimony of James Solmi, town engineer for Rocky Hill, indicated that at his request defendant installed a Jersey type barrier behind the sewer catch basin and backfilled the area with soil. In his deposition testimony, John T. Moran, the tree expert for plaintiff testified that although the Jersey barrier was helpful it was not high enough to give adequate lateral support for the trees. However, he did not specify in specific terms what type of lateral support would be sufficient.
Defendant should be compelled at his own cost to erect a sufficiently high barrier, with sufficient backfill of soil, to adequately support the trees on plaintiff's land. Since a town road is involved, with a sewer basin already installed and future sidewalks envisioned, any remedy ordered by this court must be acceptable to the town. However, there is no reason to prevent the defendant or his agents from completing the relocation of Cobey Road or complying with all the other subdivision requirements including sewer basin or sidewalk installation providing such work is done with timely notice and reasonable care. CT Page 9448
The harm to plaintiff's trees is irreparable and limited injunctive relief is appropriate because the harm is actual and imminent. Powell, Law of Real Property, id., § 702[3]. Any mandatory injunction must be issued with caution, but one was issued in a slope rights case by Judge Nadeau in Franc v.Bethal Holding Co., Superior Court, judicial district of Danbury, February 23, 1996.
Defendant is ordered to provide at his cost an adequate lateral support to the two trees on plaintiff's land by means of a sufficiently high barrier made from concrete or other suitable materials and then backfilling the area behind the barrier to a reasonable depth in order to cover the tree roots all as may be approved by appropriate Town of Rocky Hill authorities. Defendant is permitted to enter temporarily and from time to time, with ten (10) days written notice to the plaintiff, so much of the westerly portion of Lot No. 7 as may be necessary to carry out this order or to comply with other requirements of the recorded subdivision plan.
Jerry Wagner, Judge Trial Referee